Ruppin, Chief-Justice.
 

 As the plaintiff's case was at the filing of the original bill, or rather as it is therein stated, and in the subsequent additions as to facts existing at the commencement of the suit, (which are proper- •
 
 *543
 
 ly amendments,) there was doubtless a ground for re» lief in this court. That case was, that the will was in-efficacious to pass the land, and "that the parties had dealt with each other under a contrary belief; that the plaintiffs had made a deed to the heir of
 
 Williams
 
 who had re-conveyed to Sanilerlin, and that the latter had accounted with the defendants and the other children for their respective shares of1the price of the land, as well as for the other parts ofthe -estate, and had been in possession of the land and improved it, believing-he had a good title, in which the defendants acquiesced.
 

 The case oi
 
 Craven
 
 v
 
 Craven ('antep.
 
 344) approved and followed.
 

 The relief sought is, primarily-, to be confirmed in the legal title by a conveyance from those to whom payment had been thus made, and to be quieted in the possession by an injunction against execution on the judgment at law ; or if that cannot be, that dower may he assigned to the wife, the real estate being undisposed of -; and that ah account may be taken of the improvements, and of the whole estate, and a decree that the defendants shall refund whatever it may be found they have been overpaid in respect of the land, to be raised out of the land, and for an injunction in the mean time,
 

 The claim for dower, it is true, is not sustainable ; as it is now settled,in
 
 Craven
 
 v.
 
 Craven,
 
 that a widow for whom any provision is made in the will, is not dowable unless she dissent.
 

 But certainly there ought in such a case, supposing it true, to be a decree for a conveyance from the heirs, they having received the price of the land. It would amount to a sale by them, and ought to he specifically executed. But it would be open to all the equity upon which defendants may resist that relief; as that the price was inadequate, or that they were mistaken in their rights. But in this case even a wider field of objection would be open to them, as no express sale, that is, by a particular contract with that view, is alleged ; but only one implied from the payments. As to that, the case is, that all the parties had the idea, that the sale already made was valid. This would impose on the plaintiffs the burden of grpving, at least, that it was a fair sale for an adequate
 
 *544
 
 price, that
 
 Williams■
 
 was a real purchaser, and himself substituted in his place-by a subsequent and independent agreement, or that the children were fully informed of the real facts,and with that knowledge received the money upon a settlement, in which the land was included. Upon these points there is evidence, which it is not necessary to investigate minutely, as the decree will not turn on it. Upon its examination it is indeed far from satisfactory. It does not appear that any account in detail was rendered or settled ; but round sums were paid to the children, as they respectively came to age, and receipts taken, in which there-is no notice of the lands specifically ; and there is no other direct proof that it was included. The probability also, that
 
 Williams
 
 purchased upon a previous agreement that the plaintiff should have the land, is so strong as to amount almost to a certainty. There is no evidence that the plaintiff communicated that fact to the defendants,or that they knew it. Indeed the bill affirms the contrary-to be true, and that
 
 Williams-
 
 did. not buy for the plaintiff, but for himself. But as the deeree will not declare these facts to be cither way, as we do not proceed on them, and do not wish- to conclude the parties upon them in any future litigation which may involve them, the examination of the evidence will not be further prosecuted.
 

 It is plain that the material equity of this case arises upon the facts that the will did not confer a power to sell, and that the parties labored under a mistake upon that point — they thinking that it did, and treating the plaintiff as the owner. This equity would entitle the-plaintiff to original relief, as an intrinsic equity of the case, independent of any proceedings at law. it rests-upon the inability of a court of law to do him right, because his title is not a legal one. The judgment at law,, and its mere legal injustice, does not create the equity of tlio case. Relief against the judgment is therefore merely collateral to the general relief to which the plaintiff is otherwise entitled ; and is founded upon its being against ■ conscience in the persons who have received the price of the land, as being effectually sold under the power, to
 
 *545
 
 take advantage of the want of it. and to insist on the legal title which they have, because they happen also to tjic ¡iejrs 0f the testator, and so to insist in a court 0f ]aw, where the present plaintiffs could make no resistance.
 

 Thera is no the'grantefTof °a power, nor of a purchaser under him, against the heir, to supply a defect m the ere. ation of thepow-cr. But it is o-purchaser, upon » defective exe-
 

 It seems to the court, for these reasons, that the new matter charged in the supplemental bill overrules the whole of this equity. It charges that pending the suit, the will has been proved as a will to pass real estate, and that the power created therein is valid, and infers that the probate relates back, and that the former sale .is confirmed thereby, and that
 
 Sanderlin
 
 has now the legal title. Supposing that.sale a fair one to Williams, we see no reason to question the correctness of tlioso positions, either as the rules of equity or law. But admitting that the sale to
 
 Williams
 
 was only colourablo, and therefore that the persons to take benefit under the power might impeach it in this court, there is nevertheless no jurisdiction here to entertain a hill of the present plaintiffs in respect of it, in which they allege that the power has been duly executed, and that under it one of them has the legal title. For the present, the case is considered upon its intrinsic equity, unaffected by the judgment at law which, in the sequel, will not be forgotten.
 

 It is true, that notwithstanding the power, the descent was ,1()t broken,and the legal title was in the heirs, a power is not an equity arising out of the estate of . . , the heir, but is itscll a legal authority over that estate, whereby, when executed, itmav be divested and vested . , , . , in another to hold as under the instrument winch created tq,c power. There is no equity, therefore, between the grantee of a ¡lower, or the person in whose favor it has ¡,ecn executed, (supposing it not to be defectively executed,) and the heir. The grantee of the power has, to the' extent of it, an absolute control over the estate at law, without (he aid of this court, and therefore cannot ask such aid. He may, as between himself and those for whose benefit it was created, in a case of doubtful construction, apply for directionsbut against the heir by
 
 *546
 
 himself, and as such, there is no relief to be given.— There cannot be a bill by the grantee, where the power is clear in its terms, merely for a decree to sell, and to bind the heir beforehand, except so far as it may be necessary to establish the will, which contains the power; which is notone of the objects here. The will and powers being established, the heir does not join in the sale. Nor after a sale and conveyance can there be a bill to confirm the sale, and declare the conveyance valid. The plaintiff cannot state a case, involving those facts, which can have equity; for they turn every question and right as against the heir, into a legal one. There arc cases in which it is laid down that there is a jurisdiction in equity, upon the bill of the owner of a legal estate in possession, to decree a deed, made or kept on foot by fraud, and under which another claims the legal title, to be delivered up to be cancelled.
 
 Lord Thurlow,
 
 indeed, thought that all that could be done was to perpetuate the testimony. But
 
 Lord Eldon
 
 ventured to say that he would give relief upon the principle of
 
 quia timet,
 
 because the deed was apparently a legal title, by which the possessor might be harrassed at law, and by the death of witnesses his title be defeated, though in truth the better one. But this can never be applied to a claim as heir, for there cannot be a fraud in the fact that he is heir.
 

 One xvho has the legal title cannot maintain a bill to have an equitable claim upon his estate declared unfounded.
 

 As little ground for relief is there against the defendants, regarding them as the persons beneficially interested under the power, as well as being the heirs.— There is no case in which it has been decided or said, that one, having or claiming to have the legal title, can come here to have it declared that another, who unjustly claims an equity arising out of that estate, has not such an equity. What comes nighest to it is a bill to foreclose. But that is essentially different. The mortgagee admits the equity of redemption to be a just right of the mortgagor, and submits that he may have the benefit of it: Only he insists that he should not always have it, and prays that he should exercise it in a reasonable time, or thereafter lose it. But although, after twenty years, a mortgagee may .rely upon the time as a bar to the
 
 *547
 
 mortgagor’s own bill for redemption, there is no prece-cedent of a bill by the mortgagor himself, to have that time declared a bar. The bar to an equity is a defence to a bill to enforce it j but can never make a ease for a decree merely to restrain the future assertion of it.
 

 The questions upon the fairness of the transactions, upon which depends the validity of the plaintiff’s title in equity, supposing it valid at law, can therefore only be investigated when it shall be impeached in equity, by the persons interested under the power. The persons having the legal title cannot repel that right to impeach it by establishing its fairness now, while the other par* ty does not allege its fairness in this court, but is as* serting, at law, its legal invalidity.
 

 Nor can the questions upon the validity of the legal title be drawn into this court,upon any idea that any thing will be deemed an execution of it here, which is not so at law, or that that the facts necessary to its validity can be better established here than at law. It may be doubted, indeed, whether a court of law would not be obliged to regard that as a good execution, which this court would not. For instance, if it be the fact that
 
 Williams
 
 purchased for the plaintiff, undoubtedly this court would set the whole aside, unless the acts or acquiescence of the parties have since confirmed it. Bui it is by no means certain that at law they could look beyond the deeds; for the question is upon their effect upon the legal title of the heir, and it does not follow that he Could take advantage of a fraud on the parties for whose benefit the power was conferred.
 
 Lord Coke
 
 says indeed, that if a power to sell be given to two executors, and one renounce, he cannot buy from his companion,but the deed is void. This is upon the apparent fraud,or danger of fraud,and the whole appears on the face of the title. Whether the enquiry could be carried further may be questioned. But if it could, it must depend at law, upon precisely the same facts on which its validity, as a legal execution of the power, would be decided here as against the heir. There is therefore nothing in the case to call thi s court iuto action, unless it be the judgment at law, and
 
 *548
 
 the state of the evidence on which the verdict was rendered ; for the conveyances do apparently duly execute. the power, which is a clear and explicit one to the executors, to sell upon the marriage of the widow; and the plaintiff has, upon the showing ofliis supplemental bill, the legal title.
 

 What effect can the judgment, and the circumstances under which the verdict was obtained, have? For the plaintiff it is contended that at the trial lie had not the legal title, though it turns out that he was then entitled to it, and that he has since got it; each of which circumstances gives him an equity, because the first made it unconscientious in the other party to sue at law, and at all events, the last makes it so to take out execution on the judgment, since the title on which it was given is now divested.
 

 It has already been remarked that the primary object of the first bill was to obtain the legal title, upon the supposition that the will gave no means of getting it; and that, if obtained, was the sole object of that bill, except for an injunction as consequential to the principal relief. All the oilier relief sought is only in the alternative of not obtaining that. The case now is, that the plaintiff has that title, and that the mistake consisted in supposing that the power was not well raised. If lie was entitled to it from the plaintiffs at law, or if they could have prevented him,and did prevent him from getting it, and by those means excluded him from his de-fence, then they did act against conscience, and the plaintiff ought to be relieved. Such the argument assumes to be the case — but the assumption is against the truth. The plaintiff had no right to call on the present defendants for the legal title. He had it potentially in himself, and culpably or ignorantly neglected to execute it. It has been shewn, that before being sued at law, he could not have framed a bill, stating himself to have a valid power, or an executed title under such a power, on which any relief could be decreed against the heir, because the plaintiff could relieve himself. By the same means he could have effectually defended himself against
 
 *549
 
 the suit of the heir. It is his own folly that he did not* It is not against conscience in the heir to enter and take the profits until a sale, as they
 
 are
 
 his right at law | and here the same persons were entitled both as heirs, and as those among whom the proceeds of a sale were to be divided. It would only be iniquitous in them if they had received those proceeds, and intercepted the legal title, which, in the actually
 
 existing case,
 
 they did not, and could not do. The only thing which could affect the conscience of the plaintiffs at law, would be that they were seeking to recover against one to whom they ought to convey the legal title, and who could not get it hut from them. If he had it, there is no equity to prevent one legal claimant contesting the like claim of another, nor after a trial at law, to enable tiie latter to re-examine the case. If he had it not, but had a l ight to claim it from a third person, the same principle applies. There can be no equity between persons, between whom there is no privity.
 

 It is not conceded, that the present plaintiffs bad not the legal title, at the trial of the ejectment. It is supposed they had not, because the will had not then been proved as a will of lands, and
 
 prima facie
 
 it was
 
 not, as
 
 it had but one witness. This takes for granted that it could not have been proved on the ejectment. This proposition is not admitted, though it is not needful in this ease to dispute,or to determine it. If it might have been then proved, it was entirely the fault of the party not to offer the proof, or the mere error in law of the court to reject it; and in neither case can this court help the party. But admitting that it was not evidence at law in that state, the subsequent probate establishes, against the present plaintiffs, that it was a good will, and the power over the real estate valid. These facts then existed, and there is no allegation in the bill that the parties were then ignorant either of the facts, or the evidence of them. Can this court, in such case, grant a new trial here, either upon the ground that the plaintiffs at law ought not to have got their verdict, or that they ought not now to proceed on it, as their title is now gone?
 
 *550
 
 In the last point of view, the verdict is regarded as being rightful at' the time. If the title is since divested, and vested in the present plaintiffs, their remedy is in a new action at law upon their title. In the former we think the rule-is settled, that this court does not interfere with a verdict in any action,and again hear the matter upon'its merits, or order a new action or issue to he tried at law, unless the matter which the party now shews, was not a defence at law, or unless he was prevented from shewing it by the fraud of the opposite party on the trial, or by mistake or accident, amounting to surprise. Whenever a legal title will be relieved against in equity, upon one of its own peculiar principles, of course an injunction will be granted to stop proceedings at law upon such title. But when the relief is sought upon the ground merely that the party has lost his defence at law by any of the above means, it is granted solely because the court of law would, accord^ ing to its forms of proceeding, be unable to redress the injury, and thus be made the instrument of doing injustice. In ordinary actions, this is the consequence of their conclusiveness at law. Whether the principle extends to the action of ejectment, may therefore be questioned, because that is not conclusive, and the applicant here can, by completing his evidence, do himself justice at law. — ■ Besides, it is probable that the only decree would be, to stay execution until another ejectment could be tried; for a court of equity has no right to' draw to itself the determination of pure questions of law, which can be tried in the appropriate tribunals. If that be so, the only operation of the injunction would be as to the costs of the first trial; for which alone a bill will not, I believe, lie in any case, and especially to charge heirs, who have not been personally in fault. But however these points may be, there would be no ground for this injunction, were the action one in which the judgment is conclusive; because it was in the power of the parties claiming under the power, either to prove the will on the trial, or, at all events before it. They had the means of making it evidence; and they must abide the consequences of
 
 *551
 
 neglecting to do it. The bill and supplemental bill must, therefore, we think, bo dismissed with costs.
 

 Pee Curiam. — Decree accord in get.