Battle, J.
 

 The only question which the pleadings present for our decision, is whether the defendant George L. Windly shall be permitted to take the slave Jesse under the deed from his father, and yet claim the legacies given to him in his father’s will. The plaintiff insists that, according to the principles of equily, he cannot take both, and that'the Court will compel him to elect between the two benefits. The doctrine of elec
 
 *288
 
 tion is well established in the Courts of Equity both of England and this State. To originate it, two things are essential: 1st, That the testator shall give property of his own.; and secondly, that he shall profess to give, also, the property of his legatee or devisee. Adams’ Eq. 93;
 
 Wilson
 
 v. Avery, 1 Dev. and Bat. Eq. Rep. 376;
 
 McQueen
 
 v. McQueen, 2 Jones’ Eq. Rep. 16;
 
 Flippin
 
 v.
 
 Banner, Ibid,
 
 450. The principle upon which the doctrine is founded, is “ that one who takes a bounty under -an instrument, is under an obligation to give effect to the whole instrument, or rather that the donor intended that he should not -enjoy that bounty if he disappointed that bestowed on another in the same instrument:” The plaintiffs contend that the actcf 1844, ch. 88, sec. 3, (Rev. Code, ch. 119, sec. 6), brings the present case within the operation of the principle. The act declares that “ every -will shall be construed with reference to the real and personal estate -comprised therein, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the willand the argument is, that at the death of the present testator, the slave Jesse belonged to the -defendant George L. Windly, -under the deed from his .father, and that, therefore, the will, speaking at that time, gave to the feme plaintiff what belonged to-the said defendant. The eon-elusion deduced from this is, that as the defendant George-has •a legacy under the will, he cannot claim under both instruments, -but must elect between them -so as not to disappoint •the legacy to his sister. The legitimacy of this course of res--soning-depends upon the enquiry whether the act can admit of the construction contended for. What then i-s the meaning of the act ? And in order to ascertain this, we must first enquire what were the ..mischiefs which it was intended to remedy. These will be -found to have been of two kinds; one relating to real, and the other do personal, estate.
 

 After the passage-of the statute of wills, it was settled that a devise could pass only-.such lands as the devisor had at the time when his will was -published.,, and that no words, however general, would embrace lands acquired afterwards, either by
 
 *289
 
 purchase or descent. 2 Black. Com. 378;
 
 Battle
 
 v. Speight, 9 Ire. Rep. 288. The effect of this was, that, as to all after' acquired lands and other real property, the devisor died intestate, contrary to his actual intention, and sometimes to the disappointment of the most cherished objects of his affections. With regard to personal estate, this rule did not prevail; for general words in his will would embrace all the personal effects of every kind of which he died possessed, or to which he was. entitled. But in some cases of specific legacies, his intention •might be frustrated by the operation of another rule. Thus, if a testator, having a lease-hold messuage, or a sum of £1000, three per cent consols, bequeathed “ all that my. messuage in A, ‘ or all that sum of £1000, three per cent consols standing i in my name,’ he is considered as referring to the house or stock belonging to him when he made his will, and,, therefore, if lie subsequently disposes of such house or stock, the bequest fails, though at his decease he may happen to be possessed of mes-suages, or a sum answering to the description in the will.” 1 Jar. on Wills, 280. Cases like this often occurred, and were supposed to disappoint, as no doubt, they often did disappoint,, the testator’s intention. To remedy these mischiefs, applying, though for different reasons, to both real and personal estate, the statute of 1 Vic. ch. 26, (of which our act of 1844, above set forth, is a literal copy), was passed in the year 1837. It needs no argument to show that the mischief did not extend to a case like the one before us. Indeed, to apply it to such a case would defeat the very purpose declared by the testator in the deed which he executed to his son. Mr. Jarman, in the conclusion of his chapter (the 10th) on the subject of
 
 “
 
 Erom wiiat period a will SPEAKS,” remarks “ that it will be remembered that the enactment which makes the will speak from the death, relates to the subject matter of disposition only, and that it does not, in any manner, interfere with the construction in regard to the objects of gift.” 1 Jar. on Wills, 291. The reason must be, that the objects of the testator’s bounty wore not within the mischiefs which the statute was intended to prevent, and it cannot, therefore, upon any
 
 *290
 
 just principles, be construed to apply to them. For a similar reason, it can not be extended, by construction^ to defeat the manifest intention of a testator to adeem a legacy, by giving effect to it under the doctrine of election.
 

 It is not denied that the plaintiffs are entitled to an account, but they have no right to put the defendant George L. Windly to an election, or to call upon him for an account respecting the slave Jesse.
 

 Pee Cueiam, Decree accordingly..