### SALLIE K. ELMORE v. L. A. BYRD AND FRED R. MINTZ.

(Filed 6 October, 1920.)

**Election—Husband and Wife—Deeds and Conveyances—Statutes—Void Deeds.**

A testator devised generally, without specific description, to his wife, among other things, the lands of which he should be seized at the time of his death, his wife having previously conveyed to him certain of her own lands under a deed void for the lack of her privy examination as provided by Rev., 952, and the want of her special examination under the provisions of Rev., 2107. She qualified as executrix under the will of her husband: *Held,* her qualification as executrix would have put her to her election were this equity otherwise applicable; but as her deed to her husband was void, he was not seized of this land at the time of his death, and the right of election was not within the terms or expression the husband had employed in making his will, as none of her land was devised by him. The principles of the equity of election discussed by WALKER, J.

APPEAL by defendants from *Devin, J.,* at August Term, 1920, of WAYNE.

The plaintiff, Sallie K. Elmore, and W. S. Elmore were married 1 October, 1868, and lived together until 3 August, 1883, when the husband died. They had several children, some of whom are living, and others have died, leaving children. On 1 April, 1883, she conveyed to her husband in fee by deed, consideration being love and affection and one dollar, a tract of land in Wayne County, containing one hundred and twenty-five acres, and situated on the south side of the Mount Olive and White Hall public road. This was all the land she owned. Since the death of her husband, Mrs. Elmore has been in possession of the

land so conveyed by her. It is admitted that she is the owner of the land, the deed being void, as she was not privately examined as provided by law (Rev., 952, nor was she specially examined, Rev., 2107), unless, under the will of her husband, she was put to her election and has so exercised it as to have lost the ownership of it, which has passed from her to others by the terms of the will.

The plaintiff, Sallie K. Elmore, has contracted to sell the land to the defendants, Byrd and Mintz, who are ready and willing to comply with the contract if her title to the land is valid, or if she is the true owner of it, which they deny, and allege that, as they are advised, she has lost her right and title by electing to take other property under the will, the testator having devised her land, or a remainder therein, to others. Her husband in his will devised all of *his* lands, or, to use his language, "the lands of which he was seized," to the plaintiff for life, for the support and maintenance of herself and children, with remainder to his children and grandchildren after her death. He also bequeathed to his wife his personal property for life, upon the same terms and conditions as the land. Plaintiff was appointed executrix, and duly qualified as such after the probate of the will.

The defendants answered the complaint, and asserted that the title to the land was not sound and good, as plaintiff had elected to take under the will, and had qualified as executrix, and, therefore, that the title to the land passed to the children of the testator under his will and after her death.

The parties, after this case was heard, agreed in writing to the following facts:

"1. W. S. Elmore died seized and possessed of about one hundred and fifty (150) acres of land in his own name, besides the land in controversy in this action, the title to which is in question.

"2. Sally K. Elmore qualified as his executrix soon after his death, but there is no record in the clerk's office of any inventory or final account, he having bequeathed to her all the personal property owned.

"3. The testator died leaving some personal property, the amount of which is unknown, and also owing certain indebtedness, which was paid by Sally K. Elmore."

The court sustained the demurrer to the answer, and defendants appealed.

*Langston, Allen & Taylor for plaintiff.*
*Fred J. Cohn for defendants.*

WALKER, J., after stating the case: It does not appear that the plaintiff had ever actually received any of the personal property or

reduced it into her possession as her own, if she did receive it, but she did qualify as executrix of the will.' Assuming that this would be sufficient as an election, we are of the opinion that there was no election on her part for other reasons. It is perfectly evident, upon the facts admitted, or not disputed, that both she and her husband believed that the title to the land had legally passed to him by her deed. They were ignorant of the law, as they might well be, and so most of laymen are, though, strangely enough, they are generally to be judged by the presumption that they know it all. But that fiction does not apply here, because the doctrine of election is based upon a more reasonable, if not stronger presumption, that, nothing else appearing, the parties knew the facts and their bearing upon the right in question. It is founded upon the idea that two benefits are presented to the party required to elect, and that they are inconsistent with each other, and, therefore, where the beneficiary selects one of them as his own it is but just and fair that he be deprived of the other. He will not be permitted to take under the will and also against it, but must make his choice and retain his own property, which has been given to another by the will, or take that which the donor has given to him out of his own estate. He cannot take both. By electing to accept the gift, he is estopped to claim his own property.

The doctrine has been variously expressed, and we will attempt to state with commensurate brevity the substance of what has been said upon it by the courts and text-writers. An election, in equity, is a choice which a party is compelled to make between the acceptance of a benefit under a written instrument, and the retention of some property already his own, which is attempted to be disposed of in favor of a third party by virtue of the same paper. The doctrine rests upon the principle that a person claiming under any document shall not interfere by title paramount to prevent another part of the same document from having effect according to its construction; he cannot accept and reject the same writing. Bispham Eq. (6 ed.), p. 413, sec. 295. The doctrine, it is said, requires that there should be alternative benefits between which the donee is to make his choice once for all. It is also necessary, in order to put any one to an election, that the testator should give by his will property owned by himself to the person required to elect, or, as it is put, some free disposable property which can become compensation for what the donor seeks to take away. Bigelow, 676; Fetter, 52 and 54; Eaton, 185. This doctrine of equity has grown out of the fundamental maxim that he who seeks equity must do equity, and it does not arise when the conscience of the alleged refractory donee is not so affected as to require him to surrender something of his own for that which his donor has conferred upon him. 1 Pom. Eq., Jr., sec. 461; Snell, p. 202. Ever since the case of *Noyes v. Mordaunt,* 2 Ves., 581, which was decided

in 1706, it has been held to be an established principle of equity that where a testator by his own will confers a bounty on one person and makes a disposition in favor of another prejudicial to the former, the person thus prejudiced shall not insist upon his old right, and at the same time enjoy the bounty conferred by the will. The intention of the testator is apparent that both dispositions shall take effect, and the conscience of the donee is affected by the condition thus implied that he shall not defraud the design of the donor by accepting the benefit and disclaiming the burden, giving effect to the disposition in his favor and defeating that to his prejudice. *Melcher v. Burger,* 21 N. C., 634. The doctrine of election, as applied to the law of wills, simply means that he who takes under a will must conform to all of its provisions. He cannot accept a benefit given by the testamentary instrument and evade its burdens. He must either conform to the will or wholly reject and repudiate it. No person is under any legal obligation to accept the bounty of the testator; but if he accepts what the testator confers upon him by his will, he must adhere to that will throughout all its dispositions. Underhill on Wills, sec. 726. This Court held it to be a familiar principle of equity that a devisee or legatee cannot claim both under a will and against it. If the will give his property to another, he may keep his property, but he cannot at the same time take anything given to him by the will; for it was given to him upon the implied condition that he would submit to the disposition of his property made by the testator. *Weeks v. Weeks,* 77 N. C., 421.

When one elected to take a benefit under the will, with burdens attached, he is bound, although it turned out that the burden was greater than the benefit. *Brown v. Knapp,* 79 N. Y., 136. One who accepts a devise or bequest does so on condition of conforming to the will. No one is allowed to disappoint a will under which he takes a benefit, and every one claiming under a will is bound to give full effect to the legal disposition thereof, so far as he can, and when one is thus put to his election under a will it matters not that what he takes turns out to be greater or less in value than that which he surrenders. *Caulfield v. Sullivan,* 85 N. Y., 153. Certainly this must be so where the person knows at the time she elects to take under the will the value of the property. In *Syme v. Badger,* 92 N. C., 706, *Judge Badger,* for the purpose of providing for the payment of a debt due his wife, devised and bequeathed to her real and personal property in payment of the debt. Mrs. Badger qualified as executrix, and took possession of the property. It turned out that the property given her was of insufficient value to pay the debt. This Court held that by proving the will and qualifying as executrix she elected to take under the will, and was thereby precluded from resorting to other assets of her testator to pay her debt. An elec-

tion once made by a party bound to elect, and under no apprehension as to his rights, and with knowledge of the value of the properties to be affected by such election, is irrevocable, and binds the party making it, and all persons claiming under him, and also all donees under the instrument whose rights are directly affected by the election. Eaton Eq., 199; *Cory v. Cory,* 37 N. J. Eq., 198.

If the donee elects to take under the will, he must carry out all of its provisions, and transfer his own property disposed of thereunder to the person named as the recipient thereunder. Eaton's Eq., 66. It is true there is a *prima facie* presumption, always, that a testator means only to dispose of what is his own, and what he has a right to give; and if it be doubtful, by the terms of his will, whether he had in fact a purpose to dispose of property really belonging to another, that doubt will govern the courts, so that the true owner, even though he shall derive other benefits under the will, will not be driven to make an election. But if, on the other hand, there should be a manifest purpose expressed in the will to dispose of the thing itself, then it is wholly immaterial whether he should recognize it, or not, as belonging to another, or whether he should believe that the title and the right to dispose of it rested in himself or not. In speaking of this very point, and in reply to a suggestion that a testator might have made a different disposition if he had been aware of the true state of the title, *Lord Eldon* declared, in *Thelluson v. Woodford,* 13 Ves., 221, that the law was too plain, that no man should claim any benefit under a will without conforming and giving effect to every other provision contained therein, as far as lay in his power, and that the question, whether the testator believed he had title to the property and the right to dispose of it, had nothing to do with the case; that the only question was, Did he intend the property mentioned to go in the manner indicated? and not whether he had power to direct it, or would have done so if he had known that he thereby imposed a condition upon another; and he added that nothing could be more dangerous than to speculate upon what a testator would or would not have done if he had known one thing or another. Where the testatrix had a third interest in the house and lot, having expended that much of her own money in its purchase, and it was insisted that under such circumstances she will not be presumed to have intended to give more than she had a right to; the Court replied that this, too, is a question of construction for the court, and the case of *Padbury v. Clark,* 2 Mac. and G., 298, seemed to be directly in point, and to lay down the rule correctly. There it was held that when a man who had an undivided moiety in a house devised it by a particular description, such as "my messuage or tenement with the garden thereunto belonging," the whole was intended to pass.

In *Miller v. Thurgood,* 33 Beav., 496, it is said there are many cases on the subject, but they all resolve themselves into this: "If a testator, having an undivided interest in a particular property, devises the same specifically, a case of election will arise and the co-owner must elect between his interest in the property and any other interest he may take under the will," and what was said in *Wilkinson v. Dent,* 6 L. Rep., is to the same effect. Mr. Pomeroy, in his excellent treatise on Equity Jurisprudence (3 ed.), 1 vol., at p. 792, sec. 475, says: "The doctrine of election is not applicable to cases where the testator, erroneously thinking certain property is his own, gives it to a donee to whom in fact it belongs, and also gives him other property which is really the testator's own, for in such cases the testator intends that the devisee shall have both, though he is mistaken as to his own title to one." He cites as authority for this statement of the law, *Cull v. Showell,* Ambler, 727 (*S. c.,* 27 Eng. Reports, Full Reprint, p. 470), where it was said, according to the syllabus (and the case is well reported): "One devised to A. for life an estate, which she supposed she had a power to dispose of, but in fact had not. She also gave a life interest in other estates to A. A. claimed the first estate under an old entail. *Held,* he is not put to his election," citing Lib. Reg., 1772, A. fo. 574-a; 3 Woodes Prec. App., 1. *Lord Apsley,* Chancellor, said in that case: "Henrietta conceived she had a power to dispose of the copyholds, and meant to give what she had a right to give, not to give what she had not. (*Vide Forrester v. Cotton,* 6, 9, 10 Dec., 1760; *ante Pulteney v. Lord Darlington.*) There is no direct proof that she meant to dispose of the copyholds, if she had no power to dispose of them. It is not matter of election. *Herle v. Greenbank* is very strong. In *Greaves v. Boyle,* covenant to settle real estate and devise of personal in satisfaction, Lord Hardwicke doubted whether it was a satisfaction; but being a condition expressed, he held it a satisfaction on the authority of *Jenkins v. Jenkins,* but said the Court ought to go no further." In a note to the decision, the Reporter says: "The doctrine laid down in this case, on the first point, has been overruled, though it has been thought that the decision might be supported on the ground of length of time, *Whistler v. Webster,* 2 Ves. Jun., 370, 371, in which case the Master of the Rolls said: 'I am to say Cull and Showell is erroneous if founded on the argument first urged; but there is another point in that case very material, viz., the length of time. It was impossible to tell of what the personal estate consisted, and no person can be put to elect, without a clear knowledge of both funds.' See *Thelluson v. Woodford,* 13 Ves., 221; *Welby v. Welby,* 2 V. & B., 199. In *Moore v. Butler,* 2 S. & Lef., 267, *Lord Redesdale* would, however, seem to have recognized the principle laid down in the principal case."

There was a second point made in that case, it will be seen, as to the length of time which had elapsed, it being thirty years after the surrender of the copyholds, so that the note of the Reporter applied to the question of election, which was the first question raised in the argument. Referring to that case (*Moore v. Butler, supra*), we find that *Lord Redesdale* cited *Noys v. Mordaunt,* 2 Vern., 582, and note, and quoted from the opinion of *Lord Rosslyn* therein, where the latter stated the ground of election to be that "No person puts himself in a capacity to take under an instrument without performing the conditions of the instrument; and they may be express or implied; if it is stated, or can be collected, that such was the intention of the parties to the instrument, that intention must be complied with." And *Lord Redesdale* added: "It may be doubtful whether such was the intent—as, if a conveyance be made under a total ignorance of one's right; in such a case the party is not bound to elect; of that description was the case in Ambler (*Cull v. Showell*), upon a will; where it did not appear to be the intent of the party *to act on the property;* and there may be cases of the same kind upon settlements."

In our case the testator has not "acted on the property" by a description of it, but merely describes it as "the land of which I am seized at my death," and the land of the wife would not answer this description. Therefore, his intention to devise it does not appear. *Cull v. Showell, supra,* would seem to be opposed to *Isler v. Isler,* 88 N. C., 581, already cited and commented upon by us, and so does *Lord Redesdale's* opinion in *Moore v. Butler,* 2 S. & Lef., 267. In *Cull v. Showell, supra,* the land given to the nephew of the testatrix was described specifically, as "all the copyhold messuages, land, etc., held or lying within the manor of Crondal," so that it appeared that she intended to dispose of that particular land, and not merely her interest therein, provided she had any, and therefore a case for an election arose.

But we need not stop to reconcile divergent authorities, if there are any in conflict, or to select from them which ones we will follow or adhere to. The foregoing account of the cases will serve the good purpose of showing how the courts may have differed concerning this doctrine of election, or to enable those so inclined to bring them together into harmony.

We can decide this case upon a different ground, peculiar to itself. It will be observed that, by agreement of the parties, the testator was seized in his own right of other lands than those described in the deed from his wife to him, which is void, and he devises to his wife as follows: "The land of which I am seized at my death," so that his description of the land he intended to devise does not include the land in question. We will not press his own description of the land beyond a fair and

reasonable interpretation of the words, as used by him. Their meaning is clear, and beyond doubt, that he intended thereby to devise only his own lands, or those of which he was legally seized at his death. There is no specified description of either his own land or that described in the deed of his wife to him. If he had described the latter tract by metes and bounds, or by any language which would identify it, a very different question might be raised, but he did not do so. He used plain words, whose meaning is unmistakable, namely, "Land of which I am seized," and he was not seized of the land in question, because his wife's deed to him was void, the privy examination of the wife, as required by law (Rev., 952), not having been taken (*Smith v. Bruton,* 137 N. C., 79; *Towles v. Fisher,* 77 N. C., 443; *Green v. Branton,* 16 N. C., 500; see Pell's Edition of Revisal, sec. 952, and notes), and further, because the examination of the wife was not made according to Rev., 2107. *Norwood v. Totten,* 166 N. C., 648. The lack of privy examination would, of itself, have invalidated the deed, or made it void as a conveyance to the wife. It is evident the testator did not wish, nor did he intend, to devise land that did not belong to him, and, therefore, it was that he used appropriate, and even technical, language to express his purpose clearly. "Land of which I am seized" means to which I am legally entitled, and this is palpably the true meaning of his words, as he intended them to have. It follows, therefore, that there was no election imposed upon his wife, for he did not will anything belonging to her, but only what he owned himself. Plaintiff's qualification as executrix was sufficient to estop her from claiming lands devised otherwise than under the will. *Tripp v. Nobles,* 136 N. C., 99 (67 L. R. A., cited in notes to 49 L. R. A. (U. S.), 1081, 1105); but her land was not devised, as we have shown, and, therefore, there is nothing for such an estoppel to operate upon. She filed no inventory, and there is no statement that she actually appropriated the property bequeathed to her.

It may be profitable for those desiring to consult the authorities more extensively that they consider the following cases decided by this Court: *Craven v. Craven,* 17 N. C., 338; *Sanderlin v. Thompson,* 17 N. C., 539; *Redmond v. Coffin,* 17 N. C., 437; *Ford v. Whedbee,* 21 N. C., 16; *Melcher v. Burger,* 21 N. C., 634; *Wilson v. Arny,* 21 N. C., 376; *Flippen v. Banner,* 55 N. C., 450; *McQueen v. McQueen,* 55 N. C., 16; *Robbins v. Windly,* 56 N. C., 286; *Bost v. Bost,* 56 N. C., 484; *McDaniel v. McDaniel,* 58 N. C., 351; *Morrison v. White,* 67 N. C., 253; *Weeks v. Weeks,* 77 N. C., 421; *Isler v. Isler,* 88 N. C., 581; *Sigmon v. Hawn,* 87 N. C., 450; *Gray v. Williams,* 130 N. C., 53; *Price v. Price,* 133 N. C., 494.

The doctrine was not applied in the case of a homestead. *Fulp v. Brown,* 153 N. C., 531. It applied to minors, for whom the Court will

elect, as they are wards of the Court (*McQueen v. McQueen, supra;*
*Flippen v. Banner,* 55 N. C., 450), and to *femes covert* (*Robertson v.*
*Stevens,* 36 N. C., 247); but it seems not to have been applied in the case
of a widow, who was a lunatic, *Lewis v. Lewis,* 29 N. C., 72, cited in
note to *In re Estate of Andrews,* 17 L. R. A., 296, because of her in-
capacity to dissent from the will, the right of dissent being personal.
*Hinton v. Hinton,* 28 N. C., 274. But this law was changed by Rev.
Code, ch. 118, sec. 1, so that the dissent may be in person, by attorney
or by guardian, as the case may be. Code of 1883, sec. 2108; Revisal
of 1905, sec. 3080.

The defendants admitted that the plaintiff is the owner of the land,
unless there is some provision of the will affecting her title, or preventing
her from claiming it. There is none, as we have shown, and the judge
properly entered the judgment as he did, compelling defendants to com-
ply with the contract of sale. It will be so certified.

Affirmed.