MRS. MYRTLE BENTON v. MRS. ALICE ALEXANDER.

(Filed 3· January, 1945.)

1. **Wills § 44—**

   Nothing else appearing, a beneficiary under a will, who is under the necessity of making an election, has exercised that privilege by offering the will as executor and procuring its probate.

2. **Same—**

   Presumption of election, arising from offering the will for probate and entering upon the administration, goes no further than the stated terms of the rule.

3. **Wills §§ 31, 44—**

   It is clear that no mechanical application of rules will subordinate the intent of the will upon the vital point whether the beneficiary is put to an election.

4. **Wills § 44—**

   The equitable doctrine of election is based upon the fundamental principle that a person, designated as beneficiary under a will, cannot take its separate benefits and at the same time reject its provisions adverse to his interests.

5. **Same—**

   The intention of the testator, to dispose of property adversely to the interests of the devisee, must ordinarily be clear to put the devisee to his election.

6. **Same—**

   The intention to put the donee to an election cannot be imputed to a testator who, as one of the supposedly alternate gifts, attempts to devise property which he mistakenly believes to be his own, and so describes it, whereas, in reality, it is the property of another.

7. **Same: Husband and Wife § 13—**

   Where a husband, who owned no realty whatever except his interest in an estate by the entireties, leaves a will by which he devises, to his wife for life, all of his real estate, and at her death to another, the wife is not put to her election by offering the will for probate, qualifying as executrix and entering upon the administration.

APPEAL by plaintiff from *Frizzelle, J.,* at February Term, 1944, of LENOIR.

The plaintiff brought this action to remove a cloud from the title of the lands described in the complaint, arising out of the claim of owner-

ship by the defendant as devisee under the will of William H. Benton, husband of plaintiff. The will is as follows:

"NORTH CAROLINA,
 LENOIR COUNTY.

"I, William H. Benton, being of sound mind and disposing memory, but realizing the uncertainty of this my earthly existence, do make and declare this my last will and testament, hereby revoking any and all wills by me heretofore made.

"Item One: I will and direct that my Executrix hereinafter named shall cause the burial of my body suitable to the wishes of my friends and relatives.

"Item Two: I will and bequeath to my wife, Myrtle Benton, as long as she may live, all my personal property of all kinds and all description wheresoever the same shall be found. At the death of my wife, such of my personal property as she has not used, I will and bequeath to my friend, Mrs. Alice Alexander.

"Item Three: I will and devise to my beloved wife, Myrtle Benton, all my real estate, consisting of lands and buildings thereon for the term of her natural life, and at the death of my said wife, I will and devise the said real estate to my friend, Alice Alexander.

"Item Four: I hereby appoint my beloved wife, Myrtle Benton, the Executrix of this, my last will and testament.

"In testimony whereof I hereunto set my hand and seal this the 5th day of February, 1938.

                                    WILLIAM H. BENTON    (SEAL)

"Signed, sealed, published and declared by the said William H. Benton to be his last will and testament in the presence of us, who, at his request and in his presence (and in the presence of each other) do subscribe our names as witnesses hereto.

"This the 5th day of February, 1938.

                                              F. M. MOYE
                                              T. H. WOOD."

Upon the death of William H. Benton, which occurred 5 January, 1939, the plaintiff, as executrix, offered the will for probate and there-after qualified as executrix and entered into the administration of the estate.

The testator, William H. Benton, at no time owned any interest in lands other than those described in the complaint, which under a deed executed 4 February, 1938, by B. J. Alexander and Mrs. Alice Alexander

(the latter being the defendant) were conveyed. to. the said W. H. Benton and wife, Myrtle Benton, and which at the time of the making of the will and at the time of the death of the testator were held by W. H. Benton and his wife, the plaintiff, as an estate by the entirety. There is an admission in the record that the lands in controversy are the lands referred to in the will.

The plaintiff denied that she had sufficient knowledge or information of conditions which might put her to an election under the will—if such election was required—and offered evidence of her physical and mental condition at the time she offered the will for probate, of her want of knowledge as to the effect of the will and of the fact that she had no counsel or adviser in the matter, all of which was rejected by the court.

On this the defendant contended that plaintiff was put to an election as to the land in controversy, and by probating the will exercised that right and she now has only a life estate therein, as given by the will.

When the case came on to be submitted to the jury, the following issue was submitted:

"Does title to the land in controversy rest in Mrs. Alice Alexander in fee simple, subject only to the life estate therein of the plaintiff, Mrs. Myrtle Benton, under the will of W. H. Benton, deceased?"

Upon this issue, the plaintiff requested the following instruction:

"Upon the evidence, and all of it, offered in this case, the Court charges you that the plaintiff was not put to her election and that you should answer the issue No." The court refused to give this instruction.

Expressing the opinion that the case resolved itself into a question of law and that the plaintiff was put to her election under the will, and having probated the same, that she was bound by all of its provisions, the judge instructed the jury that if they believed all the evidence in the case, it would be their duty to answer the issue "Yes."

Thereupon, the jury answered the issue "Yes," and the court rendered its judgment that the defendant, Alice Alexander, was "the owner in fee simple, subject only to the life estate thereon of the plaintiff, Mrs. Myrtle Benton, of the lands in controversy in this action," describing the lands referred to in the complaint, and taxed the costs against the plaintiff.

From this judgment the plaintiff appealed, assigning errors.

*Guy Elliott and J. A. Jones for plaintiff, appellant.*

*F. Ogden Parker, J. Faison Thomson, Geo. B. Greene, and F. E. Wallace for defendant, appellee.*

SEAWELL, J. While decided differently in many jurisdictions, it is settled law in this State that, nothing else appearing, a beneficiary under

a will, who is under the necessity of making an election, has exercised that privilege by offering the will as executor and procuring its probate. *Mendenhall v. Mendenhall,* 53 N. C., 287; *Tripp v. Nobles,* 136 N. C., 99, 48 S. E., 675; *Elmore v. Byrd,* 180 N. C., 120, 104 S. E., 162; *Syme v. Badger,* 92 N. C., 706.

The question presented here is whether the plaintiff in this action was put to her election under the terms of her husband's will. Bearing upon the issues in controversy, if this query should be answered in the affirmative, we might inquire whether plaintiff was reasonably informed, or in the exercise of due diligence might have become informed, of those facts and conditions reasonably necessary to a valid and irrevocable choice, and consider the significance of the evidence on that point. Since we are convinced we need not go any further than a construction of the will in the light of admitted facts to arrive at a decision, we enter into no discussion of the rejected evidence bearing upon that phase of the case. In passing, however, we observe it is not disputed that the personalty willed to her was insufficient to pay the debts of the deceased, and that she spent substantial sums of her own money in discharging them. While it is contended that, in law, this might ordinarily merely reflect the unwisdom of her choice, it does have a bearing on the intent of the testator, who is presumed to have known his property, its value, and the extent of his obligations, when we come to analyze the question of election from that point of view; and, as hereafter pointed out, it may well be a decisive factor in the case.

In our approach to the problem, we are compelled to cite elementary law and principles well understood by the profession. But in their arrangement it is our purpose to make it clear that no mechanical application of rules will subordinate the intent of the will upon the vital point whether the beneficiary is put to an election.

The equitable doctrine of election is based upon the fundamental principle that a person designated as beneficiary under a will cannot take its separate benefits and at the same time reject its provisions adverse to his interest. "The doctrine rests upon the principle that a person claiming under any document shall not interfere by title paramount to prevent another part of the same document from having effect according to its construction; he cannot accept and reject the same writing. Bispham Eq., 6th Ed., p. 413, sec. 295." *Elmore v. Byrd,* 180 N. C., 120, 122— "The doctrine of election, as applied to the law of wills, simply means that one who takes under a will must conform to all of its legal provisions." *McGehee v. McGehee,* 189 N. C., 558, 560, 127 S. E., 684.

To raise the legal necessity of election, the intent of the donor must clearly appear from the will under recognized rules of construction. Referring particularly to the type of problem here presented, it is said

in Page on Wills, Vol. 4, p. 1347 : "The intention of testator to dispose of property or interests adverse to those of the devisee, must ordinarily be clear to put the devisee to his election," citing *Rich v. Morisey,* 149 N. C., 37, 62, S. E., 762; *Bank v. Misenheimer,* 211 N. C., 519, 191 S. E., 14.

We cannot accept the contention that upon the face of the will, the testator either actually conveyed, or intended to convey, lands belonging to his wife to another, or that if he did so, he did it with the intention of confining her to an alternate gift of personalty.

The land, subject of the devise in the will, is described generally as "all my real estate, consisting of lands and buildings thereon." Nothing else appearing, this would probably be regarded as insufficient to describe land held by the husband and wife in entirety, and beyond the testator's power of disposition—which in the event of his death would, by survivorship, become the estate of his wife. However, conceding that extraneous evidence and the admissions in the record identify the land devised to be the land so held by the entirety, it is not thereby any too clearly established that it was the intention of the donor to put the widow to an election. Under the circumstances of the case, it seems to us rather more reasonable that he was mistaken as to the nature of his interest in the property, and supposed himself, at the time of making the will, to be the owner of the land or some disposable interest in it, and was not consciously devising it as land of his wife.

In the case at bar there is no express declaration that the one gift should be taken in lieu of the other, as we often find in wills intended to put the wife to her election with regard to common law or statutory rights in the property of her husband. The inference of election arises only from the assumption that the devise related to the land of the wife. The intention to put the donee to an election cannot be imputed to a testator who, as one of the supposedly alternate gifts, attempts to devise property which he mistakenly believes to be his own, and so describes it, whereas, in reality, it is the property of another. In the case at bar the inference that an alternative proposal is presented in the will depends on the assumption that the testator was consciously devising his wife's land, whereas the terms of ownership employed—"my real estate"—are strongly persuasive that he regarded it as his own. Such a description—designation by the mere circumstance of ownership—would be sufficient in any will to pass title to the lands of the owner and is commonly used for that purpose. Its significance here cannot be ignored. It is strong evidence of the fact that the testator really supposed the land to be his own, or that he had a disposable interest in it, and was not conscious as we have said of an attempt to devise the land of his wife.

In *Elmore v. Byrd, supra,* p. 125, *Walker, J.,* writing the opinion, quotes from Pomeroy on Equity, 3 Ed., 1 Vol., at p. 792, sec. 475:

"The doctrine of election is not applicable to cases where the testator, erroneously thinking certain property is his own, gives it to a donee to whom in fact it belongs, and also gives him other property which is really the testator's own, for in such cases the testator intends that the devisee shall have both, though he is mistaken as to his own title to one." Mr. Pomeroy cites *Cull v. Showell,* Ambler, 727, *S. c.,* 27 Eng. Reports, full reprint p. 470: "One devised to A. for life an estate, which she supposed she had a power to dispose of, but in fact had not. She also gave a life interest in other estates to A. A. claimed the first estate under an old entail. *Held,* he is not put to his election."

The case considered in *Elmore v. Byrd, supra,* was distinguished from *Cull v. Showell, supra.* But in our opinion, the cited case embodies a sound principle of law. Its adoption by such a distinguished and careful writer on Equity as Mr. Pomeroy gives it added weight. We are in accord with these authorities.

There are other considerations that lead to our conclusion.

Presumption of election arising from offering the will for probate and entering upon the administration goes no further than its stated terms. It is sometimes loosely said to imply that the donee thereby elects to "abide by the terms of the will"—a declaration which is entirely too broad. From whatever point of view we take it, if the husband of this devisee merely attempted to ration the needs of the wife in her own lands without an alternate gift of his own property, which, under the law is available to her, there is no election, and the probate of the will raises no estoppel and is not detrimental to her assertion of her independent right. There are other duties of her office, the performance of which are not inconsistent with such assertion of right.

It is required that the executrix should pay the debts of her husband out of the estate. The law provides that the personalty must be applied to these debts—to pay them is an obligation upon the estate superior to that of the bequest. The legal obligations—the debts, the assets, and the relation of the estate thereto—were fixed things as of the time of the death. If we refer only to the intent of the testator and apply to him the presumption that he knew the conditions under which he made both the bequest and the devise, it seems conclusive that he must take into consideration that he owed more than his personal property would pay; but if we confine ourselves to the reality of the case, it is plain that he gave his wife nothing in the bequest of his personalty except the burden of administration, plus the privilege of paying the deficiency caused by the fact that his assets did not meet his liabilities.

The wife did not in the beginning, nor did she at any time during the period of her administration, have in her hands or accept any personalty by reason of the bequest. That property went under her hands in her capacity as executrix, and as such, she was, under the law, a trustee charged with the duty of its application to the debts. There was never at any time any surplus of personalty which might be applied to the bequest. The condition of the estate at the time of the death precluded such a possibility.

Under these circumstances, we can see no act of the plaintiff in the premises which could estop her from the assertion of her right to the lands in controversy, and the judgment of the court below is, therefore, reversed. The plaintiff is entitled to have judgment in accordance with the prayer of her complaint and conformable to this opinion. It is so ordered.

Judgment reversed.