MRS. ZOA L. HAYWOOD, MRS. ROSA FULFORD, ET AL., v. R. H. RIGS-BEE, R. H. RIGSBEE, EXECUTOR, R. H. RIGSBEE, TRUSTEE, ET AL.

(Filed 28 January, 1935.)

**1. Wills E a—**

The intention of the testator as gathered from the entire instrument is controlling, and will prevail over particular expressions which, in their technical sense, are apparently inconsistent therewith.

**2. Wills E f—Under provisions of will in this case funds held in trust should be distributed per stirpes upon termination of trust.**

The will in this case devised to each of testator's children certain parcels of land in fee and certain parcels for life with remainder over to their children, and by later item created a trust with provision that each of the children should share equally in the income therefrom, and that the children of any deceased child should take the parent's share in the income, with further provision that upon the death of a child or his children without issue, the share of such child should be distributed among the other beneficiaries as designated. At the expiration of thirty years after testator's death the will provided that the trust should be terminated by "an equal division of the fund among my children and their issue." The will declared the testator's intention to treat his children equally. At the expiration of the trust two of testator's children had died without issue, but six children were living, some of whom had living children and grandchildren: *Held,* although a technical construction of the words

"equal division . . . among my children and their issue" might require the fund to be equally divided among the living children, grand-children, and great-grandchildren of the testator upon the termination of the trust, construing the instrument as a whole the fund should be distributed equally among the six surviving children of testator to effectuate the testator's intent to treat his children equally, the beneficiaries taking *per stirpes*, the deceased children having left no issue.

**3. Same—Intent to dispose of property per stirpes will prevail over words requiring per capita distribution when construed in technical sense.**

Where a will bequeaths property to be equally divided among testator's "children and their issue," but it is apparent from the context of the will that testator intended a stirpital distribution of the funds, the language of the bequest will not be given a technical construction which would defeat the intent of the testator as gathered from the whole instrument, and the property will be distributed *per stirpes* among the lineal descendants, thereby precluding children taking with their living parents.

BROGDEN, J., took no part in the consideration or decision of this case.

APPEAL by plaintiffs from *Cranmer, J.,* at November Term, 1934, of DURHAM. Affirmed.

This case was heard before a referee upon the following agreed statement of facts, to wit:

"1. That Atlas M. Rigsbee died a citizen and resident of the city and county of Durham, on 29 November, 1903.

"2. That Atlas M. Rigsbee left a last will and testament, dated 7 August, 1893, which is duly and regularly probated in the office of the clerk of the Superior Court of Durham County, in Book of Wills B, pages 35-44, which said will was duly probated on 7 December, 1903; that there was no codicil to the said will.

"3. That Atlas M. Rigsbee was the husband of Rowena Rigsbee, who died on 30 January, 1921.

"4. That on 7 August, 1893 (the date of the execution of the will in controversy), Atlas M. Rigsbee was the father of eight children, all of whom were then living, whose names were as follows: Cora Rigsbee Markham, wife of Hugh P. Markham; Robert H. Rigsbee; Mary E. Middleton, wife of Robert Lee Middleton; Zoa Rigsbee (now Zoa Rigsbee Haywood); Sallie A. Rigsbee; William T. Rigsbee; Mattie T. Rigsbee (now Mattie R. Bitting); Rosa Rigsbee (now Rosa Rigsbee Fulford).

"5. Cora Rigsbee Markham died intestate and without issue prior to the death of Atlas M. Rigsbee, deceased, and her husband, Hugh P. Markham, died after the death of A. M. Rigsbee, deceased, and prior to 29 November, 1933.

"6. That William T. Rigsbee died prior to 29 November, 1933, without ever having been married.

"7. That at the termination of the thirty (30) year period of the trust, to wit: on 29 November, 1933, Atlas M. Rigsbee had the following living descendants: Six children (naming them), twelve grandchildren (naming them), and seven great-grandchildren (naming them).

"8. That all proper parties necessary for a construction of the terms of said will have been made parties to this proceeding and are duly before the court.

"9. The will of Atlas M. Rigsbee was prepared by W. W. Fuller, Esq., an attorney at law of Durham, North Carolina, in his own handwriting.

"10. That the assets of the estate and trust of the late A. M. Rigsbee are considerably in excess of the liabilities of said estate and trust.

"11. That Exhibit 'A' attached hereto is an exact copy of the last will and testament of A. M. Rigsbee, deceased."

## "EXHIBIT 'A.'

### "WILL OF A. M. RIGSBEE.

"IN THE NAME OF GOD, AMEN!

"I, Atlas M. Rigsbee, of the Town of Durham and County of Durham in the State of North Carolina; being sound both in body and mind but being also mindful of the uncertainty of life, and desiring to direct the disposition of my estate, do make, declare and publish this my last will and testament, hereby annulling and revoking all former wills by me made, that is to say:

"I desire and direct that my body be decently buried in my section of the Cemetery of the Town of Durham, and that the stone or monument that shall mark my grave be selected by my wife and paid for by my executors.

"ITEM FIRST: I give, devise and bequeath unto my wife, Roena M. Rigsbee, my old home house on the corner of Green Street and Rigsbee Avenue, adjoining the lands of William Mangum, and one-half of the land from Green Street down Rigsbee Avenue to Watkins Street, that is to say from Green Street down to halfway between said Street and Watkins Street and so through the lot from Mangum's line to Rigsbee Avenue, and the dwelling house where I now live, on the North side of Corporation Street, and with said house, all the land together with all houses, fixtures, and improvements thereon, which I now own or may own at the time of my death, West of the line to be established as follows: Commencing at a point on the North side of Corporation Street in or near the bottom east of my garden, running North so as to strike the Southwest corner of a lot known as the Hunt Brick Yard lot on the Northern boundary of my land. All the above property in this item is to be held and owned by my wife Roena M. Rigsbee during her natural

life, and at her death, I give and devise all of it in fee to my son, William T. Rigsbee and his heirs.

"I devise and bequeath in fee to my wife, Roena M. Rigsbee, and her heirs all my plantations on the North Carolina Railroad near the cotton factory, and known as the 'Winnie or Albert Brassfield Place.' I also likewise give and bequeath to her absolutely, all my household and kitchen furniture, my bay horse Bob, and my clay bank horse with black mane and tail, my family carriage and my Tyson and Jones buggy. I also give and bequeath to her absolutely Ten Thousand Dollars in money, unless she realizes something from a policy of accident insurance which is by its term payable to her, in event of which such realization and recovery she is to have only so much of said Ten Thousand Dollars, added to what she receives under said policy the full sum of Ten Thousand Dollars, then this legacy is not to vest, but is to go as hereinafter provided for. I also bequeath and confirm to her such parts of two policies in the Brooklyn Life Insurance Company made partly payable to her, as she may be entitled to under the terms thereof.

"ITEM SECOND: I give, devise and bequeath to my daughter Cora F. Markham and her heirs in fee the house on the corner of Rigsbee Avenue and Watkins Street in Durham where she now lives, and all the land between Watkins Street and up Rigsbee Avenue halfway to Green Street where the line provided for in the First Item is to be established; and I give and devise to said Cora F. Markham and her heirs in fee my James Vickers Plantation, and I give and devise to my said daughter, Cora F. Markham, during her natural life, the house and lot on the West side of Rigsbee Avenue, north of John W. Carlton's where she once lived, together with all my land in the rear and South of John W. Carlton's to Hunt Street and at her death I give and devise said last mentioned house and lands to her children if any are living at her death.

"ITEM THIRD: I give and devise to my son Robert H. Rigsbee and his heirs in fee, all my land and houses lying North of Corporation Street and North of Garrard Alley, west of Strayhorn Alley and East of North Alley, and also a strip of land on the West side of North Alley North of Corporation Street from North Alley to a line to be established, commencing on Corporation Street East of my garden so as to strike the Southwest corner of the Hunt Brick Yard lot North of my land, said strip to run from Corporation Street to Hunt Brick yard lot.

"I also give and devise to my son Robert H. Rigsbee for and during his natural life time and at his death to his children if any living then, my three store houses and lots on the Northeast corner of Main and Mangum Streets in Durham, and the storehouses and lots on the East side of Mangum Street, South of the Parrish Building, also my storage house and lot in the rear of my Mangum Street stores, and half of the

vacant land between said storage house and my Parrish stores, and the vacant land in rear of my Stores on Main Street, and half of the strip of vacant land owned by me and used as a passway between my houses and the Parrish Building.

"ITEM FOURTH: I give, and bequeath unto my daughter, Mary E. Middleton and her heirs in fee the house and lot on the corner of Watkins Street and Rigsbee Avenue where she now lives. I also give and devise to my daughter, Mary E. Middleton for and during her natural life, and at her death to her children then living all the balance of my houses and lots on the West side of Rigsbee Avenue, South of Hunt Street on each side of the branch, and on Seminary Street West of Rigsbee Avenue.

"ITEM FIFTH: I give and devise unto my daughter Zoa Rigsbee and her heirs in fee, all my houses and lots lying East of Rigsbee Avenue and South of Seminary Street West of Mangum Street adjoining the lands of Thomas J. Rigsbee, and including the dwelling house and Baptist Female School house. I also give, and devise to my said daughter Zoa Rigsbee for and during her natural life and at her death to her children then living—I also give and devise (sic) all my houses and lots on the East side of Mangum Street and North of Green Street adjoining the lands of W. H. Holloway and the Misses Hutchins.

"ITEM SIXTH: I give and devise to my daughter, Sallie A. Rigsbee and her heirs in fee all my land on the West side of Rigsbee Avenue, South of Corporation Street including all the tenant houses and lots on the East side of the branch, West of Corbett Street and the corner lot on the Southwest corner of Rigsbee Avenue and Corporation Street back to a line as shown on a plat of said land and to the lot devised to Cora F. Markham by this will.

"I also give and devise to my said daughter Sallie A. Rigsbee for and during her natural life and at her death to her children then living, all my houses and lots East of Rigsbee Avenue and South of Hunt Street and North of Seminary Street on each side of the branch; and the store houses and lots South of the First Baptist Church, known as the Racket corner, on the West side of Mangum Street.

"ITEM SEVENTH: I give and devise unto my son, William T. Rigsbee, and his heirs in fee, after the death of his mother, my old house place on the corner of Rigsbee and Green Street and the lot laid off with it in the first item of this will, where I now live on the North side of Corporation St.

"I also give and devise to my son William T. Rigsbee for and during his natural life, and at his death to his children then living the store houses and lots on the West side of Mangum Street running through from Main to Parrish Street known as the Angier lot.

"ITEM EIGHTH: I give and devise to my daughter Mattie T. Rigsbee and her heirs in fee, my houses and lots on Broadway St. commencing at L. T. Buchanan's lot, and running thence back of the depth of Buchanan's lot, including all the lots up to North Alley on Broadway Street. I also give and devise to my daughter Mattie T. Rigsbee for and during her natural life, and at her death to her children then living the store houses and lots on the corner of Main and Church Street known as the Redmond corner or Kempner Corner, and all my houses and lots lying on the North side of Holloway Street East of Mangum Street, and South of Howerton and Bro. Carriage Shop.

"ITEM NINTH: I give and devise to my daughter Rosa Rigsbee and her heirs in fee, my houses and lots on the South East corner of Rigsbee Avenue and Corporation Street from the rear or North Corner of L. T. Buchanan's lot on Rigsbee Avenue East with his line, and in that direction with line of lots devised herein to Mattie T. Rigsbee to North Alley. I also give and devise to my said daughter Rosa Rigsbee, for and during her natural life and at her death to her children then living my store houses and vacant land on the South side of Parrish Street and East of Parrish Building now belonging to J. S. Carr, running back within twenty-two feet (22 ft.) of the rear of J. J. Rigsbee's store houses on Main Street, and one-half interest in the passway between the Parrish Building, and the store houses and storage house devised to Robt. H. Rigsbee hereinbefore with the express direction and charge that there must be kept open a passway to Parrish Street not less than ten feet in width; and all my houses and lots lying between Mangum Street and Rigsbee Avenue and South of Green Street.

"ITEM TENTH: I give and devise to my two nieces Mary and Martha Anderson, daughters of my sister Jane Anderson my entire interest in and to the dower or old homestead land of Jane Anderson their mother, after the death of their mother to hold the same to them and their heirs in fee.

"ITEM ELEVENTH: I give and devise to my brother Thomas J. Rigsbee and his heirs in fee a strip of land across and in the rear of his stores on Main Street twenty-two feet (22) deep, commencing at the east end of my storage room house and in the rear of the store houses on Mangum Street, and running to the rear end of the Glenn Store.

"ITEM TWELFTH: I direct and instruct my Executors, hereinafter named to sell public or private on such terms as they may think best and convey and to deliver to the purchaser, all my mules, horse, cattle, hogs, wagons, old buggies, Jerseys, farming utensils, threshing machines, cotton gins, presses and all other personal and real estate, property not otherwise disposed of in this will, and to collect all policies of Life Insurance, notes, accounts or other debts of any kind owing me.

"I direct my Executors to pay all my just debts, and if the amount received by them from the Brooklyn Life Insurance Company that is made applicable on its face to my debts is not sufficient for that purpose they shall then pay the balance out of collections, and other life policies.

"ITEM THIRTEENTH: I empower, instruct and direct my Executors, after paying my debts and pecuniary legacies, to deliver and pay to the Trustees hereinafter named, all County and other municipal bonds I may own and all moneys in their hands from any source which said bonds, and moneys said Trustees shall take and hold as a trust fund to be by them prudently kept invested in good and safe interest bearing United States, County, City, or Town bonds or loaned out at best rate of interest on notes, secured by real estate, at the discretion of my said Trustees. Out of the income from such funds, the Trustees shall receive as full compensation for their own labor and responsibility six per cent among or between them of the said income collected by them, but they have power and authority to employ such aid, help, counsel and assistance as they think necessary to serve them in executing said trust, and to pay for the same out of the income of said fund, and after paying such commissions and expenses, and the taxes on the fund and premiums on life policies of W. A. Jenkins and other such policies of like kind as I may hold at my death, or have an interest in, for I direct all such policies to be kept in force during the life of the insured and all collections from said policies to go into said trust fund, they shall pay such income semi-annually on the first days of January and July in each year in equal proportion to my wife and each of my children, or if any child be dead leaving children then alive, his or her parent's share shall be paid to him, her or them, but when the issue of any dead child becomes extinct before the final distribution of the trust, such share shall vest in and belong to the surviving members of the class equally as herein originally provided, that is to my children or their children. The said trust is to continue and exist for thirty years from the time of my death and is then to be closed by an equal distribution of the fund among my children and their issue. During the existence of said trust my Trustees must pay the expenses while at school of any minor child including board, raiment, tuition, books and other necessary expenditures, and charge all such expenses against the share of the income belonging to such child.

"But in no case shall any of the principal of said fund be used or diminished unless it becomes necessary to meet and pay the premium on the life insurance policies before referred to in this item. In case of the death, removal, resignation or disability of any Trustee, his place shall be filled by the remaining Trustees. I also give in charge and keeping to said Trustees all the property devised in this Will to my

minor children until said children shall have respectively reached the age of twenty-one years, whereupon such child is to take charge of his or her own property.

"But until such delivery of possession said trustees shall keep in repair and insure the property of each minor child; improve as they think prudent the vacant property of each and collect rents of such as can be rented and collected, and pay all taxes. These expenses, and repairs and improvements shall be paid out of each child's respective income or rents; and in no case shall any real estate of any minor be sold to meet such expenses, taxes or improvements or repairs.

"All surplus of rents or income of any minor child's property shall be treated as his or her part of the income from the trust fund all of which said income shall be paid to and invested by said Trustees as if they were duly appointed Guardians. As compensations for their services in connection with the management and care of the property of said infants said Trustees shall jointly receive ten per cent of the annual income from said property. If any of my children shall die leaving no issue at their death then the property and estate of such child either in the trust fund or devised specifically to them for life, shall go into the trust fund specifically or the proceeds thereof as my trustees think wisest and be treated, managed and finally divided as if originally a part of the trust fund.

"ITEM FOURTEENTH: I nominate, constitute and appoint my brother, Thomas J. Rigsbee, my son Robert H. Rigsbee and my son-in-law Hugh P. Markham as the Executors of this my last will and Testament; and I likewise nominate, constitute and appoint said Thomas J. Rigsbee, Robert H. Rigsbee and Hugh P. Markham, Trustees to execute the powers and perform the duties imposed herein on the Trustees.

"I declare that I consider my children as all, not liable to any other for any advancements, and I treat them as equal in my estate.

"In the construction of this Will I charge the Executors and Trustees with the duty of construing it as a whole.

"In Testimony Whereof and of all the foregoing I have hereunto set my hand and seal this the 7th day of August, 1893.

"ATLAS M. RIGSBEE.    (SEAL.)"

Upon the agreed facts the referee reported his conclusions of law to the effect that the net proceeds of the trust fund should be equally divided per capita among the twenty-five children, grandchildren, and great-grandchildren of Atlas M. Rigsbee who were living at the expiration of the trust thirty years after the death of the testator. To this report the defendants filed exceptions, and appealed to the Superior Court. The case came on to be heard at term time, and the judge of

the Superior Court, upon the agreed facts, reversed the conclusions of law reached by the referee, and adjudged that the trust fund be equally distributed among the six children of Atlas M. Rigsbee, deceased, who were living at the expiration of the thirty-year trust on 29 November, 1933, namely: R. H. Rigsbee, Mary E. Middleton, Zoa L. Haywood, Sallie A. Rigsbee, Mattie R. Bitting, and Rosa A. Fulford. To this judgment the plaintiffs excepted and appealed to the Supreme Court, assigning errors.

*Bryant & Jones and Egbert L. Haywood for appellants.*

*L. P. McLendon, Hedrick & Hall, Brawley & Gantt, and S. C. Brawley, Jr., for appellees.*

SCHENCK, J. We are called upon to construe the following language: "The said trust is to continue and exist for thirty years from the time of my death, and is then to be closed by an equal distribution of the fund among my children and their issue." Item Thirteenth.

At the expiration of thirty years from the death of the testator, namely, on 29 November, 1933, there were living six children of the testator, and there were two deceased children who died without issue. Some of the now six living children of the testator have children, in all twelve and some of the now living children of the testator have grandchildren, in all seven. The appellants contend that the trust fund of the testator should be divided into twenty-five (25) equal shares and distributed share and share alike among the children, grandchildren, and great-grandchildren of the testator, and the appellees contend that the trust fund should be divided into six (6) equal shares and distributed share and share alike among the now living children of the testator.

In the construction of a will the predominant and controlling purpose of the testator must prevail when ascertained from the general provisions thereof over particular and apparently inconsistent expressions to which standing alone a technical force would be given. The intention of the testator is the paramount consideration, and we must look to the entire instrument for the indicia of this intention. Item Second to Item Ninth, inclusive, give to each of the testator's eight children certain parcels of real estate in fee and certain parcels for life, with remainder over to their children, and Item Thirteenth establishes a thirty-year trust and provides that the trustee "shall pay such income (from the trust) semi-annually on the first days of January and July in each year in equal proportion to my wife and each of my children, or if any child be dead leaving children then alive, his or her parent's share shall be paid to him, her or them, but when the issue of any dead child becomes extinct before the final distribution of the trust, such

share shall vest in and belong to the surviving members of the class equally as herein originally provided, that is to my children or their children"; and near the close of the will is the following: "I declare that I consider my children as all, not liable to any other for any advancement, and I treat them as equal in my estate." We think it is clear that the testator intended to make an equal division among his children of that portion of his estate given to them absolutely and of the income from the trust he established; and, unless the words "and their issue" be isolated and given a strict technical construction by interpreting them as meaning lineal descendants of any generation, it also appears that the testator intended that the equality among his children should be maintained not only before and during the existence of the trust, but also upon the close thereof, when the funds therein were to be distributed.

When the clause under consideration is construed in connection with the will as a whole, we think it is manifest that the intention of the testator was to divide his entire estate, real and personal, whether given absolutely or in trust, equally among his several children, and the issue of such children as may be dead at the expiration of the trust. It is in the character of issue of his deceased children that any others than the testator's children were made objects of his bounty. Since there are no children, or issue of such, of any deceased child of the testator, we are of the opinion that there should be an equal distribution among the children of the testator of the funds of the trust which was terminated 29 November, 1933.

To give the will the construction contended for by the appellants would place the children of the children of the testator in competition with their parents, and the grandchildren of such children in competition with their parents and grandparents, and would prevent equality of distribution among the children of the testator.

While it may be true that if the phrase "equal distribution" and the word "issue" be given their strict technical meanings, without reference to the will as a whole, they might sustain the contention of the appellants, yet it is well recognized that if certain phrases or words used in a will, taken in their technical sense, would dispose of property *per capita* when it is apparent from the context that the testator meant to provide for a stirpital disposition, the Court will so hold. If there is anything in the will indicative of the intention that the devisees or legatees shall take as families the property will be divided *per stirpes* and not *per capita*. *Lee v. Baird,* 132 N. C., 755 (766), and cases there cited.

In *Martin v. Gould,* 17 N. C., 305, where the testator gave his residuary estate "to be equally divided, between my son Daniel and three

grandsons (naming them), to them and their heirs forever," it was held that although, taking the residuary clause by itself, the grandsons would not take as a class but each an equal share with his uncle, yet, in view of a preceding clause of the will showing that the testator meant to deal equally between his two sons, and to make the children of his deceased son stand in their father's stead, the son took one-half the residue and the grandsons the other half. And since the context showed that the testator meant to deal equally between his son and the children of a deceased son, and to make such children stand in their father's stead, the force of the word "equally" in the residuary gift to the son and grandsons was overcome.

"The usual acceptance of the word 'issue' is 'an indefinite succession of lineal descendants who are to take by inheritance, and hence heirs of the body.' . . . But, when used in wills, it is, of course, subject to the rule of construction that the intention of the testator, as ascertained from the will, is to have effect, rather than the technical meaning of the language used by him; . . ." *Edmondson v. Leigh,* 189 N. C., 196 (201).

There is a clash among the decisions in the various jurisdictions as to the meaning to be given to the word "issue" or "descendants," some courts holding that the words include descendants of every degree, and are to be given that meaning in the absence of explanatory context, and thereby permit children or descendants of lower degree to share *per capita* with living parents; and some courts holding that in the absence of explanatory context a *per stirpes* division of property devised to issue or descendants should be directed, and thereby preclude children taking with their living parents. The two principles are in conflict and any attempt to reconcile them would be futile. (For an interesting discussion of these conflicting principles, with collection of authorities, see 83 A. L. R., 164.) However, we are not called upon at this time to choose, without precedent, between them, since in *James v. Hooker,* 172 N. C., 780, this Court is placed in accord with the latter principle. In that case the grantor conveyed land to Penelope E. Dancy, the wife of George A. Dancy, "for and during the period of her natural life, with remainder over after the expiration of her life estate to the children now or hereafter born of the intermarriage of the said George A. Dancy and Penelope and the lawful descendants of said children, their heirs or assigns, that are living at her death." In construing this language, *Mr. Justice Hoke* said: "The primary and linguistic definition of descendants refers to the lineal issue or heirs of the dead and not a living parent or ancestor, and when the term is used in reference to tenure of property and without anything to change or modify the ordinary meaning, authority is to the effect that it refers to persons upon whom the

law has cast the property by descent and includes only the lineal issue of a deceased ancestor." Not only do we have this authority of our own court but the authority of the courts of many other jurisdictions.

When we consider the expressed purpose of the testator, contained in the later clauses of his will, to treat all his children as equal in his estate, and to have his will construed as a whole, together with the scheme of parity among the testator's children that permeates the entire instrument, we are led to the conclusion that the construction placed upon the will by his Honor was a correct one.

The judgment of the Superior Court is

Affirmed.

BROGDEN, J., took no part in the consideration or decision of this case.