LIZZIE B. HUBBARD, EXECUTRIX OF THE ESTATE OF CHRISTIAN GAY PATE, DECEASED, v. JAMES A. WIGGINS, MOLLIE LOUISE WIGGINS, JAMES WILHELM WIGGINS, JOHN DEWEY WIGGINS, JOHN DEWEY WIGGINS, JR., JAMES HAMPTON WIGGINS, SAMUEL PAUL WIGGINS, STANLEY PAUL WIGGINS, JOHN WILLIAM ARCHER, MARY FRANCES ARCHER, JOHN WILLIAM ARCHER, JR., ROBERT WALTER ARCHER, CAROLYN WHITE ARCHER, BARBARA JEAN ARCHER, JESSE WAYNE ARCHER, J. FORREST ARCHER, DAISY ARCHER BRITT, ROBERT CLINTON ARCHER, ROBERT CLINTON ARCHER, JR., DEBORAH LOUISE ARCHER, MARY ALICE ARCHER EDWARDS, PEGGY ANN ARCHER, J. SAMUEL HUBBARD, JUANITA HUBBARD DAVIS, H. COMPTON GAY, FRANK H. GAY, FRANKIE SUE GAY, HARVEY H. GAY, VIRGINIA BELLE GAY WHITE, BARBARA LEE WHITE, BARBARA ANN GAY CLAYTON, ALMA CHRISTINE GAY KYTE, WILLIAM C. GAY, JR., ELIZABETH BLANCHE GAY, DEWEY ELIZABETH GAY TAYLOR, DEWEY GAY HARRISON, ERNEST WOOD TAYLOR, JR., NELLIE GREENE GAY, GERTRUDE GAY BRYANT, HARVEY H. GAY, JR., NELL GAY WHITE, DOROTHY GAY WHITE WATKINS, JOHN E. WHITE, LILAR BIRDSONG VICK, OMA LEE VICK HARRIS, JAMES BATTE HARRIS, SANDRA DIANNE HARRIS, JAMES VICK, JUDITH DEE VICK, JOYCE ANN VICK, NELL VICK NEAL, ELLEN LEE ADAMS, PATRICIA ANN NEAL, MAY VICK SHIELDS, JEAN MARIE SHIELDS, LINDA TART SHIELDS, JAMES

ANDERSON SHIELDS, ELIZABETH ANN SHIELDS, LAURICE VICK ALLEN, MINA VICK LIGGAN, ELIZABETH BIRDSONG HUBBARD, HOWARD STOCKWELL, GLORIA STOCKWELL FAISON, ELIZABETH STOCKWELL, SHIRLEY STOCKWELL, HOWARD STOCKWELL, JR.; MASONIC AND EASTERN STAR HOME, INC., A NORTH CAROLINA CORPORATION, OF GREENSBORO, NORTH CAROLINA, AND J. CRAWFORD BIGGS, JOHN N. DUNCAN, C. C. CUNNINGHAM, GROVER L. DILLON, B. TROY FERGUSON, L. B. FLOURNOY, H. O. LINEBERGER AND A. EUGENE SPIVEY, TRUSTEES OF EDENTON STREET METHODIST CHURCH OF RALEIGH, NORTH CAROLINA, AND ALL OTHER PERSONS, KNOWN OR UNKNOWN, IN BEING OR NOT IN BEING, AND NOT SPECIFICALLY NAMED HEREIN, WHO HAVE OR MAY HAVE OR CLAIM AN INTEREST IN THE ESTATE OF CHRISTIAN GAY PATE, DECEASED.

(Filed 5 May, 1954.)

**1. Wills § 32—**

> While ordinarily it will be presumed that a testator intended to dispose of property owned by him and did not intend to dispose of property over which he did not have power of testamentary disposition, such presumption of fact, like other presumptions of fact and technical rules of construction, as distinguished from rules of law, will not be permitted to overrule the evident intent of the testator, express or implied in the language of the instrument considered as a whole.

**2. Wills §§ 31, 39—**

> Where the language of a will is ambiguous or doubtful, evidence is competent to show the circumstances surrounding the execution of the will, including the condition, nature and extent of testatrix' property, and her relation to her family and to the beneficiaries named in the will, so as nearly as possible to get testatrix' viewpoint at the time the will was executed, and even if the language of the will is not ambiguous or doubtful, the admission of such evidence may not be prejudicial.

**3. Wills § 31—**

> The intention of testatrix as gathered from the general purpose of the will and the significance of the various expressions, enlarged or restricted according to their real intent, is the will, and a phrase will not be given its literal meaning if contrary to the intent as gathered from the language of the instrument considered as a whole.

**4. Wills § 36—**

> Ordinarily, where a definite and certain devise or bequest is made and some part of the same property is disposed of in a later part of the will, the original devise or bequest is only reduced to the extent necessary to comply with the later provision in the will.

**5. Wills § 39—**

> In an action to construe a will, the extent and character of the estate should be established when material as an aid in ascertaining the intent of the maker of the will.

**6. Wills § 34e—**

> Where the amount of property intended to be embraced in a bequest is ambiguous and doubtful under the language of the will, later directions

in the instrument for the disposition of testatrix' property inconsistent with one of the possible interpretations of the prior bequest, even though such directions are ineffectual because of ambiguity or illegibility, are proper to be considered in ascertaining the amount of property testatrix intended to embrace within the prior bequest, since such later provisions throw light upon testatrix' intent in this regard.

**7. Same—Where amount of government bonds included in bequest is ambiguous, the amount must be ascertained in accordance with intent as gathered from entire instrument.**

Testatrix directed that a named nephew "is to have the Bonds & on Hundred Dollars." At her death testatrix possessed two sets of bonds, one in an unmarked envelope of the value of three hundred dollars payable to herself or the nephew, and the other in an envelope marked her personal account, in the amount of six thousand dollars, payable to herself alone. Testatrix left no children her surviving, but was survived by 46 nieces and nephews and grand-nieces and grand-nephews, two brothers and one sister, and made bequests to 45 of these relatives, specifically excluding four from any share for reasons stated, with substantial equality among the beneficiaries named. Later provisions of the will attempting to dispose of fifteen hundred dollars in bonds and to set up a trust fund for business schooling of certain children were ineffective for ambiguity or illegibility.

*Held:* In accordance with the intent of testatrix as gathered from the language of the instrument construed in its entirety, the phrase in question was properly construed to direct the delivery of the three hundred dollars in bonds in their joint names to the nephew and to bequeath to him one hundred dollars in cash, rather than a bequest of the six thousand dollars in bonds and one hundred dollars to him, which would result in a grossly disproportionate gift to the nephew.

BOBBITT, J., concurring.

ERVIN, J., dissenting.

BARNHILL, C. J., and WINBORNE, J., concur in dissent.

APPEAL by defendant J. Samuel Hubbard, from *Hall, Special Judge,* December Term, 1953, of WAKE.

This action was brought pursuant to the provisions of the Uniform Declaratory Judgment Act (G.S. 1-253, *et seq.*), for the purpose of obtaining the advice and guidance of the court in the construction and interpretation of the last will and testament of Christian Gay Pate, and in the administration of her estate.

The facts essential to the disposition of this appeal are fully stated in the court's findings of fact, conclusions of law and the judgment included therein, which are as follows:

"This cause being duly calendared for hearing and coming on to be heard before the undersigned Judge presiding at the December 1953 Assigned Civil Term of Wake County Superior Court, and a jury trial having been waived and all parties having agreed in open Court that the Court should hear and decide all questions of fact and law in issue in this

action, and, it appearing to the Court that all parties involved in this action have been properly served with summons either by personal service, by publication, or by personal service outside of the State and are before the Court.

"And it further appearing that all minors and incompetents and all unknown parties are represented in this action by and through A. L. Purrington, Jr., guardian *ad litem* for Frankie Sue Gay, Barbara Lee White, Barbara Ann Gay Clayton, Alma Christine Gay Kyte, William C. Gay, Jr., Elizabeth Blanche Gay, Dewey Gay Harrison, Ernest Wood Taylor, John Dewey Wiggins, Jr., James Hampton Wiggins, Stanley Paul Wiggins, Jesse Wayne Archer, Deborah Louise Archer, Peggy Ann Archer, James Batte Harris, Sandra Dianne Harris, Judith Dee Vick, Joyce Ann Vick, Ellen Lee Adams, Patricia Ann Neal, Jean Marie Shields, Linda Tart Shields, James Anderson Shields, Elizabeth Ann Shields, Elizabeth Stockwell, Shirley Stockwell, Howard Stockwell, Jr., and Barbara Jean Archer, and for all other persons, known or unknown, or in being or not in being, and not specifically named in this action, who have or may have or claim an interest in the estate of Christian Gay Pate, deceased, who are defendants in the above entitled action, and for all unknown spouses of defendants, known or unknown, and not specifically named in this action, who have or may have or claim an interest in the estate of Christian Gay Pate, deceased, and that said guardian *ad litem* has duly filed answer herein, and,

"The Court having heard the evidence and arguments of counsel on matters of fact and law at issue, hereby finds the following facts:

"1. That the true and accurate transcription of the Will of Christian Gay Pate, indecipherable words being indicated by dashes, is as follows: (Note: the lines of said will are numbered for convenience of reference)

I Christian Gay Pate, I am a right & sound
mind, and this is my Will. If anything
should happin to me before I do it I want a
nice family marker put to the graves for I don't
like the one there. & Lizzie B. Hubbard &
Dorothy Gay White is act as administrators of my
state. I want them to have one thousand
Dollars a piece for their time, & I want
Jim Wiggins and Louise to have my car &
5 hundred dollars. & Christine Gay my niece
to have a nuf money to pay for Business Course
if she will take one, & my house is to
stay like it & my sister family is to
live here for 2 year or more if they

HUBBARD *v.* WIGGINS.

need to pay the taxes and up keep, & put fifty Dollars a month in bank for Dorothy Gay. if they make that above the expenses. Lizzie is keep one five hundred for Lillie Vick to buy thing that she really need. Mary Archer is to have. 2. hundred. in cash. & Sam Hubbard is to have the Bonds & on Hundred Dollars & Nita H. Davis is to have 2. hundred dollars, in cash. & my great nieces & fifty a piece. & Loris D. Allen is to have one hundred. & my church to have one Hundred in cash. & my Brothers don't need none so they will get five Dollars each. && the other shall stay in trust to for a while & if any one of the - - - children fish high help them with a Business course up to five Hundred Dollars each. The piano is Dorothy Gays & any that she lizzi thing else she wants in my house. & Mr. John White can help them & he shall have six hundred dollars for his help to pay on a car for them. & if any one tries to Break this they are not to have nothing at all, for these are the things I want done. they don't have to give Bond. one hundred. fifty dollars more to the Masonic & eastern Star home to furnish a room in the hospital. & when my home is sold it shall be divided between my nieces & nephews & my & great nieces and nephews. at 2 hundred a piece & my sister shall have 5 Hundred Dollars. I don't want Bill Gay or Harvey Gay Jr. to have any for they Drink & throw it way, so I doe want Almo Gay, Bill Wife to have 2 hundred Dollars to feed her children with instead of him getting it she shall

Clint

use it for the children. Bill or Foris Archer is not to have anything for they Drink. I don't want them to have any. Lizzie is to have my china if she wants it. & I want fifteen hundred dollars in saving Bonds for flowers to the graves.

This is my Will. Feb. 12, 1949

Christian. Gay. Patc.

"2. That the persons named by testatrix in line 45 of her said will as Bill Gay and in line 50 of her said will as 'Bill or Foris Clint Archer' were intended by testatrix to be those persons among her nephews bearing such names, i.e., William C. Gay, Sr., John William Archer, Sr., J. Forest Archer and Robert Clinton Archer, Sr.

"3. That in lines 31, 31a and 32 of testatrix's will the words 'anything else . . . in my house' were intended by testatrix to include only furniture in testatrix's house.

"4. That a family marker and individual name plates have been purchased, paid for and erected on testatrix's lot in Montlawn Memorial Park, Wake County, North Carolina, at a cost of $636.83.

"5. That testatrix's automobile has been delivered to James A. Wiggins and Louise Wiggins.

"6. That the language in lines 23 and 24 of said will, '& my great nieces & 50 a piece.,' was intended by testatrix to constitute a bequest of $50.00 to each of testatrix's great nieces living at her death.

"7. That the language appearing in lines 20 and 21 of testatrix's will, to wit: 'Sam Hubbard is to have the Bonds & on Hundred Dollars,' when considered with other provisions appearing in said will and with the fact that testatrix held at her death two sets of bonds (one set in an unmarked envelope and consisting of three $100.00 U. S. Bonds, Series D, payable to 'Mrs. Christian G. Pate or Mr. J. Sam Hubbard,' and the other set in an envelope marked 'Mrs. W. L. Pate, personal account,' and consisting of six $1,000 U. S. Bonds, Series D, payable to 'Mrs. Christian Gay Pate') is ambiguous and subject to interpretation and the Court hereby finds as a fact that said language appearing in lines 20 and 21 of the will, 'Sam Hubbard is to have the Bonds & on Hundred Dollars,' was intended to bequeath to Sam Hubbard the three $100 U. S. Bonds, Series D, payable to 'Mrs. Christian G. Pate or Mr. J. Sam Hubbard,' and $100.00, and that Sam Hubbard is entitled to no other property under the language of said bequest; that this finding does not prejudice the rights of Sam Hubbard under any other part of said will.

"8. That Christian Gay Pate left no children or issue surviving her and the Court cannot determine from the pleadings and the evidence to what children the testatrix intended to refer in line 29 of her will, reading 'of the - - - children fish high help them with.'

"Now, THEREFORE, upon the foregoing findings of fact and upon the admissions of facts in the pleadings, the Court concludes as matters of law and orders, adjudges and decrees as follows:

"1. That the transcription of the will of Christian Gay Pate, as set forth in Exhibit B attached to the complaint and as set forth in Book of Wills S, page 72, Office of the Clerk of Superior Court of Wake County, be, and the same is hereby amended in accordance with findings

of facts No. 1 above, and that the Clerk of the Superior Court of Wake County be, and he is hereby authorized and directed to amend the transcription of said will as the same appears in Book of Wills S, page 72, Office of the Clerk of the Superior Court of Wake County to conform with said findings of facts No. 1 above, and, as amended, said transcript is hereby ordered, adjudged and decreed to be a true and accurate transcription of the will of Christian Gay Pate, deceased.

"2. That under the provisions in lines 31, 31a and 32 of the will of Christian Gay Pate, testatrix bequeathed her piano to Dorothy Gay White Watkins and also bequeathed to Dorothy Gay White Watkins and to Elizabeth Birdsong Hubbard any pieces of furniture contained in testatrix's home at the time of her death which either Dorothy Gay White Watkins or Elizabeth Birdsong Hubbard might select and elect to take.

"3. That under the provisions of lines 41 through 52 of said will, the executrices of said will are given an implied power to sell, after two years from testatrix's death, the homeplace of testatrix at 7 East Lane Street in the City of Raleigh, North Carolina, in such manner and to such person or persons and at such prices as they might deem for the best interest of said estate, and to distribute the proceeds of said sale as follows: (a) $500.00 to testatrix's sister, Nell Gay White; (b) $200.00 to each of testatrix's nieces, nephews, great-nieces and great-nephews living at her death, excluding William C. Gay, Sr., Harvey H. Gay, Jr., John William Archer, Sr., Robert Clinton Archer, Sr., and J. Forest Archer; (c) $200.00 to Alma Norwood Gay, wife of William C. Gay, Sr., for the use of her children, Barbara Ann Gay Clayton, Alma Christine Gay Kyte, William C. Gay, Jr., and Elizabeth Blanche Gay; that the sale of said homeplace, as the same is set forth and admitted in all of the pleadings filed herein, be, and the same is hereby approved and confirmed and Lizzie B. Hubbard, Executrix of the Estate of Christian Gay Pate, deceased, is hereby authorized and empowered to make, execute and deliver deed therefor under her power of sale; that no person was given the right under said will, as a beneficiary, devisee or legatee, to use or occupy said homeplace after the 9th day of July, 1951; that the legacies provided in lines 41 through 52 of said will are demonstrative legacies, and as such are entitled, if the proceeds of sale of said homeplace shall be insufficient to satisfy in full all of such legacies, to have any deficiency supplied from the general assets of the estate to the extent necessary to pay all such legacies in full and the expenses of sale of said homeplace shall be paid from the general assets of the estate.

"4. That under the provisions of lines 10, 11 and 12 of said will, Christine Gay (Alma Christine Gay Kyte) is to have enough money to pay for a business course if she will take one; that in carrying out this provision the Executrix be, and she is hereby authorized and directed to set aside

for the benefit of Alma Christine Gay Kyte in full and complete discharge
of the legacy provided in lines 10, 11 and 12 of said will, the sum of
$500.00 out of the general assets of the estate, which sum is hereby de-
clared to be a general legacy, and to pay therefrom the actual expenses of
tuition, books and supplies incurred by the said Alma Christine Gay
Kyte in taking a business course from such *bona fide* school offering such
business course as she may elect: PROVIDED, that the said Alma Christine
Gay Kyte must elect to take such course and must begin such course on
or before March 7, 1958, and must complete such course on or before
March 7, 1959, in default of which such funds as shall not theretofore
have been paid by the Executrix shall be included in the residue of said
Estate and so distributed; and in the payment of any portion of such
legacy, the Executrix is hereby authorized to pay said funds in the dis-
cretion of said Executrix.

"5. That the provisions of lines 27 through 31 of said will, '& the other
shall stay in trust to for a while & if any one of the (word indecipherable)
children fish high help them with a business course up to five Hundred
Dollars each,' are so vague, indefinite and ambiguous as to be incapable
of administration under the law and therefore the same are hereby
ordered, adjudged and decreed to be void.

"6. That the provisions in lines 53 and 54 of said will reading: 'I want
fifteen hundred dollars in savings Bonds for flowers to the graves,' are so
vague, indefinite and ambiguous as to be incapable of administration
under the law and therefore the same are hereby ordered, adjudged and
decreed to be void.

"7. That testatrix's will contains no valid residuary clause, wherefore
any funds or properties not otherwise disposed of, including any legacies
or devises which may have lapsed or may have been found by this Court
to be void, shall be distributed among the distributees and heirs at law of
Christian Gay Pate under the laws of descent and distribution as upon an
intestacy, without exclusion of any distributee or heir at law, and particu-
larly without exclusion of testatrix's brothers referred to in lines 26 and
27 of the will and her nephews, referred to in lines 45 and 50 of the will.

"8. That in the payment of bequests and other benefits provided in
testatrix's will it is ordered, adjudged and decreed that all properties
specifically bequeathed shall be delivered to the respective legatees de-
nominated in said will to receive said property; that the legatees of the
proceeds of sale of the homeplace shall be paid in full from the proceeds
of sale of the homeplace, any deficiency to be supplied from the general
assets of the estate; that thereafter general legacies shall be paid to the
extent of funds available from funds of the estate then remaining; any
residue of funds thereafter remaining shall be distributed among the heirs
at law and distributees of Christian Gay Pate in accordance with the

general laws of descent and distribution as upon an intestacy; and if the funds or properties of the Estate shall be insufficient to pay the various legacies and benefits provided under the will then such legacies and benefits shall abate in the following order, with pro rata abatement within each class: (a) residuary benefits; (b) general legacies; (c) demonstrative legacies; (d) specific legacies.

"9. That the costs of this action, including a fee to A. L. Purrington, Jr., guardian *ad litem* as aforesaid, in the amount of $400.00, to be taxed by the Clerk, be and they are hereby taxed against the Estate of Christian Gay Pate to be paid by the Executrix of the Estate of Christian Gay Pate, deceased.

"10. That any orders herein directed, or authority herein given, to Lizzie B. Hubbard, Executrix, or to the Executrix of the Will of Christian Gay Pate, shall have equal binding effect and authority on any other person who may at any time succeed Lizzie B. Hubbard as Executrix or who may at any time serve as executor, executrix or administrator *c.t.a* of the Will and Estate of Christian Gay Pate.

"11. That the six $1,000.00 U. S. Bonds, Series D, payable to 'Mrs. Christian Gay Pate,' were not disposed of by said will and shall fall into the residue of the Estate; and that Sam Hubbard is entitled to the three $100.00 U. S. Bonds, Series D, payable to 'Mrs. Christian G. Pate or Mr. J. Sam Hubbard.'

"This 11th day of December, 1953.

　　　　　　　　　　"C. W. HALL
　　　　　　　　　　Judge Presiding, December, 1953, Assigned
　　　　　　　　　　Civil Term, Wake County Superior Court."

From the foregoing findings of fact, conclusions of law and judgment, the defendant J. Samuel Hubbard appeals, assigning error.

*Parker & Sink for plaintiff, appellee.*

*Lassiter, Leager & Walker and Ballard S. Gay for appellees John William Archer, et al.*

*A. L. Purrington, Jr., guardian ad litem.*

*J. C. B. Ehringhaus, Jr., for defendant, appellant.*

DENNY, J. The one question to be determined on this appeal is whether the testatrix intended to give J. Samuel Hubbard the three $100.00 U. S. Bonds, Series D, which were payable to her or J. Sam Hubbard, and $100.00; or did she intend to give him the six $1,000.00 U. S. Bonds, Series D, payable to herself, Mrs. Christian Gay Pate, and $100.00?

We are not inadvertent to the fact that if the testatrix in the instant case had died intestate, J. Samuel Hubbard would have been entitled to the three $100.00 U. S. Bonds, Series D, as a matter of law. *Ervin v. Conn,* 225 N.C. 267, 34 S.E. 2d 402; *Watkins v. Shaw, Comr. of Revenue,* 234 N.C. 96, 65 S.E. 2d 881. There is also a presumption recognized by the courts in construing wills that a testator intended only to dispose of property owned by him and did not intend to include in a devise or bequest any property over which he did not have the power of testamentary disposition. 57 Am. Jur., Wills, section 1163, page 760; *Bank v. Misenheimer,* 211 N.C. 519, 191 S.E. 14, 110 A.L.R. 1310. It is not unusual, however, for persons to misconceive the extent of their testamentary rights and to undertake to dispose of property over which they have no power of testamentary disposition. *Elmore v. Byrd,* 180 N.C. 120, 104 S.E. 162; *Benton v. Alexander,* 224 N.C. 800, 32 S.E. 2d 584, 156 A.L.R. 814; *Lamb v. Lamb,* 226 N.C. 662, 40 S.E. 2d 29; *Byrd v. Patterson,* 229 N.C. 156, 48 S.E. 2d 45; *Trust Co. v. Burrus,* 230 N.C. 592, 55 S.E. 2d 183.

We must remember, however, that in the interpretation of a will to ascertain the intent of the testator, neither presumptions nor technical rules of construction, as distinguished from rules of law applicable to the construction of wills, such as the rule in *Shelley's case* or the rule against perpetuities, will be permitted to overrule the evident intent of the testator, either expressly or by necessary implication, gathered from the language of the will as a whole. *Carroll v. Herring,* 180 N.C. 369, 104 S.E. 892; *Haywood v. Rigsbee,* 207 N.C. 684, 178 S.E. 102; *Heyer v. Bulluck,* 210 N.C., 321, 186 S.E. 356; *Richardson v. Cheek,* 212 N.C. 510, 193 S.E. 705; *Trust Co. v. Miller,* 223 N.C. 1, 25 S.E. 2d 177; *Trust Co. v. Waddell,* 234 N.C. 454, 67 S.E. 2d 651.

In 57 Am. Jur., Wills, section 1135, page 731, *et · seq.,* we find this statement: "The one rule of testamentary construction to which all others are servient and assistant, it has been said, is that the meaning intended by the testator is to be ascertained and given effect in so far as legally possible. The testatorial intention will control any arbitrary rule, however ancient may be its origin, . . ."

The court below being of the opinion that the provision in the will with respect to the disposition of the bonds is ambiguous, admitted testimony, over the objection of the appellant, to show the extent of the personal contacts of the testatrix with her relatives who were named as beneficiaries in her will.

The appellant assigns as error the admission of the evidence referred to above, which, in sum and substance, discloses that her sister, Nell Gay White, and her husband, John E. White, lived in the home of the testatrix from the time of their marriage in 1931 until the death of Mrs. Pate; that Mrs. White is the sister referred to in line 13 of the will, who was to con-

tinue to live in the decedent's home for two years after Mrs. Pate's death; that Dorothy Gay White (now Dorothy Gay White Watkins), who was named as co-executrix of Mrs. Pate's will, is the daughter of Mr. and Mrs. John E. White and was born and reared in the Pate home. (She qualified as co-executrix of Mrs. Pate's will but later married and moved to Meridian, Miss., and was permitted by the court to resign.) That Mrs. Pate from time to time visited J. Samuel Hubbard, a nephew, Nita H. Davis (Juanita Hubbard Davis), a niece, Mrs. Lizzie Hubbard, a niece by marriage, and James A. Wiggins, a nephew. That J. Samuel Hubbard visited Mrs. Pate several times while the Whites lived in her home; so did James A. Wiggins; that Lizzie Hubbard visited her more often than anyone else, and that Lizzie Hubbard was the only relative that visited Mrs. Pate during the last two or three years of her life.

In our opinion, irrespective of whether the will of Mrs. Pate is ambiguous or doubtful in the respect contended by the appellees, this evidence was not prejudicial to the appellant. It simply tends to show that the personal contacts of Mrs. Pate with her relatives, the objects of her bounty, were limited largely to those with the Whites who lived in her home, J. Samuel Hubbard and his sister Nita H. Davis (Juanita Hubbard Davis) of Petersburg, Virginia, Mrs. Lizzie Hubbard of Emporia, Virginia, and James A. Wiggins of West Greene, Georgia.

In seeking to discover the intent of a testatrix, when the language used is ambiguous or of doubtful meaning, it is proper for the court to take into consideration the circumstances surrounding the execution of the will, including the condition, nature, and extent of her property, her relationship to her family and to the beneficiaries named in the will, so as nearly as possible to get her viewpoint at the time the will was executed. 57 Am. Jur., Wills, section 1144, page 741, et seq.; Herring v. Williams, 153 N.C. 231, 69 S.E. 140, 138 Am. St. Rep., 659; Crouse v. Barham, 174 N.C. 460, 93 S.E. 979; Haywood v. Rigsbee, supra; Anderson v. Bridgers, 209 N.C. 456, 184 S.E. 78; Heyer v. Bulluck, supra; Cannon v. Cannon, 225 N.C., 611, 36 S.E. 2d 17; Trust Co. v. National Missions, 226 N.C. 546, 39 S.E. 2d 621.

In Cannon v. Cannon, supra, the late Chief Justice Stacy said: "The intention of the testatrix is her will. This intention is to be gathered from the general purpose of the will and the significance of the various expressions, enlarged or restricted according to their real intent. In interpreting the different provisions of the will, the courts are not confined to the literal meaning of a single phrase. A thing within the intention is regarded within the will though not within the letter. A thing within the letter is not within the will if not also within the intention." Bank v. Corl, 225 N.C. 96, 33 S.E. 2d 613; Weathers v. Bell, 232 N.C. 561, 61 S.E. 2d 600; In re Will of Johnson, 233 N.C. 570, 65 S.E. 2d 12;

*Trust Co. v. Waddell, supra; Efird v. Efird,* 234 N.C. 607, 68 S.E. 2d 279; *Trust Co. v. Schneider,* 235 N.C. 446, 70 S.E. 2d 578.

It is apparent that the testatrix was a person of very limited education, who undertook to write her own will. Generally speaking it would seem that she had in mind a rather comprehensive and elaborate plan for the disposition of her estate, but did not have sufficient experience and training in such matters to make her intent in respect to certain bequests either clear or effective. She had forty-six nieces and nephews and great-nieces and great-nephews, four of whom she excluded; two living brothers, and one sister; she made bequests to forty-five of these relatives. Except for those rendering service in connection with the administration of her estate, and Dorothy Gay White (now Watkins), who was reared in her home, all were treated substantially alike unless J. Samuel Hubbard is to take all of her bonds in the aggregate sum of $6,300.00, and $100.00, plus $200.00 along with the other nieces and nephews, great-nieces and great-nephews (except those expressly excluded), in the division of the proceeds from the sale of her home.

The testatrix had two sets of bonds in different envelopes, one containing $300.00 par value, and the other $6,000.00 par value. The $300.00 in bonds in the name of the testatrix and J. Sam Hubbard, and $100.00 in cash, would be the largest amount given to any of her relatives other than those connected with the administration of her estate, except the sum of $500.00 bequeathed to James A. Wiggins, who, according to the record, is a Methodist minister; $500.00 to her sister Nell Gay White, who lived in her home; and $500.00 to her niece, Lillie Vick, to enable her "to buy thing that she really need." Lillie Vick, according to the pleadings, has six children, while J. Samuel Hubbard has no children. Moreover, if this testatrix knew that she did not have the testamentary power to dispose of the $300.00 in bonds because they were made payable to her and J. Sam Hubbard, but intended to give him the $6,000.00 in bonds, it is rather strange and unusual that she would have added "& on Hundred Dollars," to this very large and disproportionate bequest.

Furthermore, later in her will this statement appears, "& I want fifteen hundred dollars in saving Bonds for flowers to the graves." Ordinarily where a definite and certain devise or bequest is made and some part of the same property is disposed of in a later part of the will, the original devise or bequest is only reduced to the extent necessary to comply with the later provision in the will. 57 Am. Jur., Wills, section 1128, page 721, *et seq.* But, since there is some uncertainty or doubt as to what bonds the testatrix intended to include in the bequest to J. Samuel Hubbard, the court has the right to consider the later bequest or reference to savings bonds, on the question as to whether she intended to include the $6,000.00 in bonds in her bequest to him.

It is unfortunate that the court was not given any information as to the extent of the testatrix's estate. It was entitled to such information. Often the knowledge of the extent or character of an estate is helpful in asceraining the intent of the maker of the will. *Herring v. Williams, supra; Ripley v. Armstrong,* 159 N.C. 158, 74 S.E. 961; *Adams v. Cowen,* 177 U.S. 471, 44 L. Ed. 851; *Blake v. Hawkins,* 98 U.S. 315, 25 L. Ed. 139.

The testatrix after making her bequests, exclusive of those in connection with the disposition of the proceeds to be derived from the sale of her home, undertook to set up a trust consisting of the residue of her estate, for the purpose of giving certain children a business education at a cost not to exceed $500.00 for each of such children. We concur with the ruling of the court below to the effect that the attempt to establish this trust failed because of its indefiniteness or illegibility of the writing in connection therewith. Even so, it is worthy of note that at the time the testatrix executed her will she had no nieces or nephews under eighteen years of age but she did have twenty-two great-nieces and great-nephews seventeen years of age or under, none of whom, in all probability, had finished high school and who might have become eligible for benefits under such trust had the testatrix used sufficient legible language to make her intent effective. However, the mere fact that she failed in her attempt to establish this trust, and also failed to make effective provisions for the establishment of the flower fund, does not prevent the consideration of these attempts on the question of her intent.

In seeking to find and apply the intent of a testator, *Stacy, C. J.,* said in *Smith v. Mears,* 218 N.C. 193, 10 S.E. 2d 659: "It is this quest for the variant minds of testators, with no two situated exactly alike and the necessity of interpreting language according to the circumstances of its use, that often results in close distinctions and renders the law of wills *sui generis. Richardson v. Cheek, supra; McIver v. McKinney,* 184 N.C. 393, 114 S.E. 399. Yet after saying this, we assiduously pursue the adjudicated cases for any gleam of light that may help us with the problem in hand. Worthy ideas expressed elsewhere and on other occasions, like nuggets of truth when or wherever found, know no barriers of time or place. It is only the foggy horizon that shuts them out." Surely the testatrix's attempt to set aside "fifteen hundred dollars in saving Bonds for flowers to the graves," is more than a mere gleam of light bearing on her intent obtained from other adjudicated cases. We think it clearly indicates that she did not intend to bequeath the $6,000.00 in bonds to J. Samuel Hubbard.

Notwithstanding all the facts and circumstances revealed by the record, the appellant seriously contends that the testatrix not only intended to bequeath to him all her bonds, totaling $6,300.00 and $100.00 in cash,

HUBBARD *v.* WIGGINS.

plus $200.00 from the proceeds to be derived from the sale of her home, but that she did so in plain and unambiguous language. We do not concur in this view.

As the authorities cited herein point out, in construing a will the language used in a single sentence, clause, or phrase, will not be permitted to control as against the evident intent gathered from the entire instrument. A will is not to be construed *per parcella,* but in its entirety. 57 Am. Jur., Wills, section 1137, page 735, *et seq.*

In our opinion when the will of the testatrix is considered in its entirety, it does not reveal an intent to give to J. Samuel Hubbard approximately twelve times as much as she gave to any of the other objects of her bounty exclusive of those administering her estate, and from six to ten times as much as she gave to each one of them. We think the provisions of the will support the ruling of the court below to the effect that the testatrix intended to give to J. Samuel Hubbard the $300.00 in bonds which she kept in a separate envelope, and $100.00 in cash, plus the amount bequeathed to him from the proceeds to be derived from the sale of her home.

The judgment of the court below is

Affirmed.

ERVIN, J., dissenting: While she dwelt among the living, the testatrix purchased three United States Savings Bonds, Series D, of the value of $100.00 each, which were payable to herself or her nephew Sam Hubbard, and six United States Savings Bonds, Series D, of the value of $1,000.00 each, which were payable to herself alone. She placed the three $100.00 bonds in an unmarked envelope. She put the six $1,000.00 bonds in another envelope bearing her name and the notation "personal account."

The testatrix had the legal power to dispose of the six $1,000.00 bonds by will. It was otherwise with respect to the three $100.00 bonds. Under the applicable Federal regulations, the complete title to the three $100.00 bonds automatically passed to Sam Hubbard by right of survivorship when the testatrix predeceased him without having cashed them.

When she executed her will, the testatrix made two references to bonds. The first appears in lines 20 and 21, and is couched in this language: "Sam Hubbard is to have the bonds & on Hundred Dollars." The second appears in lines 53 and 54, and is expressed in this way: "I want fifteen hundred dollars in Savings Bonds for flowers for the graves." The will does not contain a residuary clause. The United States Savings Bonds were found in their enclosing envelopes after the death of the testatrix, who did not have any claim to any other bonds.

The appeal raises this solitary question for decision: Did the testatrix bequeath the six $1,000.00 bonds to Sam Hubbard?

We must look to the will for the answer to this question. "In construing a will, the court seeks to ascertain and carry into effect the expressed intent of the testator, *i.e.,* the intention which the will itself, either explicitly or implicitly, declares. Where the language employed by the testator is plain and its import is obvious, the judicial chore is light work; for, in such event, the words of the testator must be taken to mean exactly what they say. But where the language in the will does not clearly express the testator's purpose, or when his intention is obscure because of the use of inconsistent clauses or words, the court finds itself confronted by a perplexing task. In such case, the court calls to its aid more or less arbitrary canons or rules of testamentary construction designed by the law to resolve any doubts in the language of the testator in favor of interpretations which the law deems desirable." *Elmore v. Austin,* 232 N.C. 13, 59 S.E. 2d 205.

The attorneys for all the parties and the majority of this Court accept as valid the determination of the presiding judge that the words "I want fifteen hundred dollars in Savings Bonds for flowers to the graves" are meaningless and void. I have no quarrel with this holding.

With the second testamentary reference to bonds thus removed, there is virtually no room left for construction. This is true because the testatrix has expressed in plain language of obvious import her unmistakable intention to bequeath to Sam Hubbard the bonds over which she had the power of testamentary disposition.

To be sure, it may be argued that the broad and unrestricted words "Sam Hubbard is to have the bonds" are susceptible of these two constructions: *First,* the testatrix intended to give Sam Hubbard all "the bonds," that is to say, the three $100.00 bonds as well as the six $1,000.00 bonds; *Second,* the testatrix intended to give Sam Hubbard "the bonds" over which she had the power of testamentary disposition, that is to say, the six $1,000.00 bonds. Her action in segregating the bonds and labeling the envelope containing the six $1,000.00 bonds as her "personal account" indicates that she knew the legal powers she had in reference to the bonds and lends support to the second of these constructions. To belabor this point, however, on this phase of the appeal would be as absurd an undertaking as to debate the medieval query "how many angels can dance on the point of a very fine needle without jostling each other." Since the testatrix was without legal power to dispose of the three $100.00 bonds by will, Sam Hubbard would receive exactly the same legacy, *i.e.,* the six $1,000.00 bonds, under either construction. *Benton v. Alexander,* 224 N.C. 800, 32 S.E. 2d 584, 156 A.L.R. 814.

For these reasons, this Court ought to make this determination: When the testatrix said "Sam Hubbard is to have the bonds & on Hundred Dollars," she gave him the six $1,000.00 bonds and $100.00.

My brethren disagree. They adjudge that when the testatrix said "Sam Hubbard is to have the bonds & on Hundred Dollars," she gave him $100.00, but no bonds. They adjudge, moreover, that the testatrix died intestate as to these bonds in spite of her positive declaration that "Sam Hubbard is to have the bonds."

These adjudications rest on a premise, which cannot be harmonized with the language of the will or the facts *dehors* that instrument, and a conclusion which cannot be reconciled with the premise.

This is the premise: When the words "Sam Hubbard is to have the bonds" are read in the light of other provisions of the will and "the fact that testatrix held at her death two sets of bonds," it appears that the testatrix was ignorant of the difference in the state of her titles to the two sets of bonds and believed that she had full legal power to dispose of both sets of bonds by will. As a consequence, the words "Sam Hubbard is to have the bonds" are so ambiguous as to be susceptible of these two constructions: *First,* the testatrix intended to give Sam Hubbard the three $100.00 bonds and no others; *second,* the testatrix intended to give Sam Hubbard the six $1,000.00 bonds and no others. This ambiguity must be removed by construction.

This is the conclusion: When the words "Sam Hubbard is to have the bonds" are construed in the light of other provisions of the will and "the fact that testatrix held at her death two sets of bonds," it appears that it was the intention of the testatrix to give Sam Hubbard the three $100.00 bonds which she could not give and to withhold from him the six $1,000.00 bonds which she could give. Since the testatrix had no legal power to bequeath the three $100.00 bonds, the testamentary provision "Sam Hubbard is to have the bonds" has no more legal significance than the whistling of the wind through the willows. And since the will contains no residuary clause, the testatrix died intestate as to the bonds in controversy.

Every jot and every tittle in the reasoning of my brethren rests in final analysis on their notion that the testatrix was ignorant of the difference in the state of her titles to the two sets of bonds and believed that she had full legal power to dispose of both sets of bonds by will. Their decision would be without validity even if support for this notion could be found in "provisions of the will and the fact that testatrix held at her death two sets of bonds." If the testatrix incorporated the words "Sam Hubbard is to have the bonds" in her will in the belief that she had full legal power to dispose of both sets of bonds by will, the conclusion is inescapable and unassailable that she intended to give Sam Hubbard both sets of bonds and her will was effectual to transfer to him the six $1,000.00 bonds over which she had the power of testamentary disposition. The supposed ignorance and the supposed belief of the testatrix do not afford an iota of support for the idea that she intended to divorce one set of bonds from the other.

The basic notion of my brethren and the reasoning based on it are in irreconcilable conflict with the presumption that the testatrix knew her own titles and the powers she had in reference to the property held by her. *Funk v. Eggleston,* 92 Ill. 515, 34 Am. R. 136; *Re McNulta,* 168 Wash. 397, 12 P. 2d 389; 57 Am. Jur., Wills, section 1163. My brethren do not specify anything in "the fact that testatrix held at her death two sets of bonds" having any logical tendency to rebut this presumption or to sustain their position. I respectfully submit that they cannot do so. When she segregated the bonds, noted on one envelope that its contents belonged to her "personal account," and refrained from making any comparable notation on the other envelope, the testatrix demonstrated that she knew the difference in the state of her titles to the two sets of bonds and that she knew her power of testamentary disposition was limited to the six $1,000.00 bonds belonging to her "personal account."

My brethren assign two reasons for their assertions that their premise and their conclusion find support in provisions of the will. The first is that Sam Hubbard would receive a "very large and disproportionate bequest" if the testatrix's words "Sam Hubbard is to have the bonds" are construed to give him the bonds which she had the legal power to bequeath to him. This reason is wholly unsatisfying. It rests on conjecture. As the majority opinion points out, "the court was not given any information as to the extent of the testatrix's estate." The first reason would be destitute of validity, however, even if it were based on fact. Since the law permitted her to do with her own as she pleased, the testatrix had an absolute legal right to make Sam Hubbard a "very large and disproportionate bequest." The will negates any theory that the testatrix had the intention to distribute her property among the natural objects of her bounty with any substantial degree of equality. She gave various persons varying gifts of varying values. She cut off her brothers with $5.00 apiece. She disinherited some of the natural objects of her bounty altogether. I fear that the first reason is simply symptomatic of the unconscious succumbing of the majority of the court to a temptation which lies in constant wait for judges—the temptation to make for a decedent in the name of construction a will which the judges deem to be more equitable than the will the decedent has made for himself.

The second reason advanced by my brethren for their assertion that their premise and their conclusion find support in the provisions of the will is bottomed on this second reference to the bonds: "I want fifteen hundred dollars in Savings Bonds for flowers to the graves." The presiding judge held these words void for vagueness, and my brethren affirm this holding. Yet they declare these meaningless words clearly indicate that the testatrix did not intend to bequeath the six $1,000.00 bonds to Sam Hubbard. I am unable to give assent to this reason. When she

inserted these words in her will, the testatrix merely exercised the privilege of changing her mind, and attempted to withdraw from her prior bequest to Sam Hubbard "fifteen hundred dollars in Savings Bonds for flowers to the graves." And this is precisely what she would have done if she had expressed her apparent purpose in words of legal validity. 57 Am. Jur., Wills, section 1128. My brethren do not reveal any reason why the law should give to void words a power which it denies to valid ones. I can think of none. Consequently I favor abiding by this well settled doctrine of the law of wills: "A clear gift by an earlier provision will not be modified or qualified by a later obscure or ambiguous provision." 69 C.J., Wills, section 1158.

For the reasons given, the premise and the conclusion of my brethren cannot be harmonized with the language of the will or the facts *dehors* that instrument.

When the premise of the majority is reduced to ultimate terms, it comes to this: The words "Sam Hubbard is to have the bonds" are so ambiguous as to be susceptible of these two constructions: *First,* the testatrix intended to give Sam Hubbard the three $100.00 bonds, and no others; *second,* the testatrix intended to give Sam Hubbard the six $1,000.00 bonds, and no others.

The conclusion that the testatrix intended to give Sam Hubbard the three $100.00 bonds she could not give and to withhold from him the six $1,000.00 bonds she could give cannot be reconciled with this premise. This is true because the conclusion runs counter to the canons or rules of testamentary construction which an ambiguity of the nature alleged calls into play.

These canons or rules are as follows:

1. The presumption is that the testator intended to dispose of property which the law permitted him to dispose of by will. *Bank v. Misenheimer,* 211 N.C. 519, 191 S.E. 14, 110 A.L.R. 1310; *Gano v. Gano,* 239 Ill. 539, 88 N.E. 146, 22 L.R.A. (N.S.) 450; *Collins v. Capps,* 235 Ill. 560, 85 N.E. 934, 126 Am. S. R. 232; *Wilkison v. Wilkison,* 130 Kan. 424, 286 P. 252; *Hood v. Nicol,* 236 Ky. 779, 34 S.W. 2d 429; *Lane v. Gess' Admr.,* 223 Ky. 448, 3 S.W. 2d 1076; *Lasater v. Cumberland Coal Corp.,* 26 Tenn. App. 277, 171 S.W. 2d 407; *Ottenhouse v. Paysinger* (Tex. Civ. App.), 244 S.W. 2d 714; *Edds v. Edds* (Tex. Civ. App.), 282 S.W. 638; *In re McNulta's Estate, supra;* 57 Am. Jur., Wills, section 1163; 69 C.J., Wills, section 1376. The reverse is also true. The presumption is that the testator did not intend to dispose of property over which he had no power of testamentary disposition. *Cox v. George* (Tex. Civ. App.), 184 S.W. 326; *Waggoner v. Waggoner,* 111 Va. 325, 68 S.E. 990, 30 L.R.A. (N.S.) 644; 54 Am. Jur., Wills, section 1163; 69 C.J., Wills, section 1376. As a consequence, a will is not to be given the construction that

the testator intended to dispose of property not devisable or bequeathable by him, unless its language is fairly susceptible of no other construction. *Bank v. Misenheimer, supra; Hood v. Nicol, supra; Long v. Long* (Tex. Civ. App.), 252 S.W. 2d 235; *Ottenhouse v. Paysinger, supra; Ford v. Bachman* (Tex. Civ. App.), 203 S.W. 2d 630; *Cheatham v. Mann* (Tex. Civ. App.), 133 S.W. 2d 264; *Sailer v. Furche* (Tex. Civ. App.), 22 S.W. 2d 1065.

2. When a person dies testate, it will be presumed that he intended to dispose of all his property by his will, and that he did so dispose of it. As a consequence, any construction of a will which will result in partial intestacy is to be avoided, unless the language of the will compels it. *Armstrong v. Armstrong,* 235 N.C. 733, 71 S.E. 2d 119; *Trust Co. v. Waddell,* 234 N.C. 454, 67 S.E. 2d 651; *Renn v. Williams,* 233 N.C. 490, 64 S.E. 2d 437; *Jones v. Jones,* 227 N.C. 424, 42 S.E. 2d 620; *Ferguson v. Ferguson,* 225 N.C. 375, 35 S.E. 2d 231; *Holland v. Smith,* 224 N.C. 255, 29 S.E. 2d 888; *McWilliams v. McWilliams,* 223 N.C. 857, 26 S.E. 2d 901; *Morris v. Waggoner,* 209 N.C. 183, 183 S.E. 353; *Case v. Biberstein,* 207 N.C. 514, 177 S.E. 802; *McIver v. McKinney,* 184 N.C. 393, 114 S.E. 399; *Faison v. Middleton,* 171 N.C. 170, 88 S.E. 141, Ann. Cas. 1917E, 72; *Ireland v. Foust,* 56 N.C. 498; *Foust v. Ireland,* 46 N.C. 184; *Boyd v. Latham,* 44 N.C. 365; *Reeves v. Reeves,* 16 N.C. 386.

3. Every part of a will is to be considered in its construction, and none of its words are to be cast aside as idle jargon, if any meaning can be put upon them. *Holland v. Smith, supra; Williams v. Rand,* 223 N.C. 734, 28 S.E. 2d 247; *Lee v. Lee,* 216 N.C. 349, 4 S.E. 2d 880; *Edens v. Williams,* 7 N.C. 27. To this end, clauses susceptible of inconsistent constructions are to be reconciled, if this may fairly be done. *Voncannon v. Hudson Belk Co.,* 236 N.C. 709, 73 S.E. 2d 875; *Bank v. Brawley,* 231 N.C. 687, 58 S.E. 2d 706; *Holland v. Smith, supra; Williams v. Rand,* 223 N.C. 734, 28 S.E. 2d 247; *Richardson v. Cheek,* 212 N.C. 510, 193 S.E. 705; *Westfeldt v. Reynolds,* 191 N.C. 802, 133 S.E. 168.

My brethren conclude that the testatrix intended to dispose of the three bonds not bequeathable by her and to die intestate as to the six bonds over which she had the power of testamentary disposition, although the language of her will is certainly susceptible of contrary interpretations. They cast aside as idle jargon the testatrix's words "Sam Hubbard is to have the bonds," although this meaning can be put on those words: The testatrix intended to give Sam Hubbard the bonds which the law permitted her to dispose of by her will.

BARNHILL, C. J., and WINBORNE, J., concur in dissent.

BOBBITT, J., concurring: Without elaboration the following considerations convince me that the intent of the testatrix is rightly determined in the decision of the Court.

1. The provisions for Sam Hubbard: "& Sam Hubbard is to have the Bonds & on Hundred Dollars." Here, it will be noted, she does not refer to "all the bonds" or "my bonds." In my opinion, *"the* Bonds" refers to the bonds with which "Sam Hubbard" is identified, namely, the bonds in her possession, presumably purchased by her, made out to "Mrs. Christian G. Pate or Mr. J. Sam Hubbard." (Emphasis added.)

2. The context: I quote only the provisions immediately preceding and immediately following: ". . . Mary Archer is to have. 2. hundred. in cash. & Sam Hubbard is to have the Bonds & on Hundred Dollars & Nita H. Davis is to have 2. hundred dollars, in cash. & . . ." There is nothing here to suggest that Sam Hubbard is to be the chief beneficiary of the estate. The inference I draw is that these beneficiaries are being treated substantially on the same basis.

3. The addition of the words: "& on Hundred Dollars." It seems to me altogether unreasonable to infer that the intent of the testatrix was to leave Sam Hubbard $6,000.00 of U. S. Bonds and add to a bequest of this value, "& on Hundred Dollars."

4. The provision: "I want fifteen hundred dollars in Savings Bonds for flowers to the grave." We are not concerned with the validity of this provision. Rather, we are concerned solely with ascertaining the intent of the testatrix. In my view, she did not think she had disposed of bonds other than those with which Sam Hubbard was definitely identified.

5. The three $100.00 bonds made out to "Mrs. Christian G. Pate or Mr. J. Sam Hubbard" were kept in a separate envelope. The six $1,000.00 bonds made out to Mrs. Christian Gay Pate were in another envelope marked, "Mrs. W. L. Pate, personal account." The two sets of bonds were separated physically and separated in her thoughts. Having purchased the three $100.00 bonds, having kept them in her possession, in a separate envelope, with no delivery of these bonds in her lifetime, it seems clear to me that these were the bonds intended for Sam Hubbard when she made provision for him: "& Sam Hubbard is to have the Bonds & on Hundred Dollars." True, resolving a question long mooted, this Court held in *Ervin v. Conn,* and *Bank v. Frederickson,* 225 N.C. 267, 34 S.E. 2d 402, that the State law otherwise applicable to gifts *inter vivos* was superseded by the Federal Statutes and regulations concerning such bonds and that the alternate payee, even though no delivery had been made during the lifetime of the purchaser, was entitled thereto. Even so, the State law prevails to the extent that such bonds are a part of the decedent purchaser's estate for inheritance tax purposes. *Watkins v. Shaw, Comr. of Revenue,* 234 N.C. 96, 65 S.E. 2d 881. It seems unrea-

sonable to assume that Mrs. Pate was aware of these refinements. She had not given the three $100.00 bonds to Sam Hubbard during her lifetime. She thought she was doing so by her Will, albeit this result was actually accomplished by operation of law under authority of *Ervin v. Conn,* and *Bank v. Frederickson, supra.*

In short, my view is that the testatrix purchased the three $100.00 U. S. Bonds, had them made payable to herself or J. Sam Hubbard, thereby earmarking these bonds for him and identifying him with them, and that she had these bonds and these only in mind when she provided: "& Sam Hubbard is to have *the* Bonds & on Hundred Dollars." (Emphasis added.)