HAZEL WAY MORSE v. CATHERINE W. ZATKIEWIEZ, EXECUTRIX OF THE
ESTATE OF JULIETTE ORRELL WAY

No. 695SC236

(Filed 2 July 1969)

**1. Divorce and Alimony § 21— alimony as debt**

An allowance for alimony is a debt.

**2. Divorce and Alimony § 21— alimony — statute of limitations**

The statute of limitations does not apply to a judgment directing the
payment of alimony. G.S. 1-306.

**3. Divorce and Alimony § 20— alimony — effect of divorce decree**

A decree for absolute divorce on ground of two years' separation does
not destroy the wife's right to receive alimony *pendente lite* under a prior
judgment entered in wife's separate action instituted under [former]
G.S. 50-16.

**4. Executors and Administrators § 19— claims against the estate —
six months' limitation**

Although a creditor who does not present his claim within six months
from the date of the first publication of notice cannot hold the personal
representative liable for any assets which he may have paid out prior to
the commencement of an action by the creditor, he can share in any assets
which remain in the hands of the personal representative.

**5. Executors and Administrators § 19;  Divorce and Alimony § 21—
claims against the estate — enforcing alimony payments**

Testatrix died 6 January 1967 leaving a will which provided that "all
of my son's debts and funeral expenses shall be paid out of my estate."
Her executor filed the final account on 20 July 1967. Plaintiff, who was
granted an absolute divorce from testatrix' son in 1951, filed notice of
claim· against the executrix on 26 July 1967 seeking $11,955 in alimony
payments allegedly due her on a 1950 judgment entered in her separate
action for alimony *pendente lite*. *Held:* (1) The unpaid alimony *pendente
lite* payments constitute a debt of the son, (2) the statute of limitations
does not run against the indebtedness, (3) the indebtedness is not affected
by the 1951 divorce decree. (4) plaintiff's claim against the estate is not
barred by her failure to file claim within six months after the executrix'
first publication of notice to creditors.                                    ·

**6. Wills § 73— action to construe will — patent ambiguity as to in-
tent of testator**

The first item of testatrix' will provided that "all of my son's debts and
funeral expenses shall be paid out of my estate" and the second item be-
queathed and devised all of testator's property to her daughter. Plaintiff,
who was granted an absolute divorce from testator's son in 1951, seeks to
recover from the estate $11,955 in alimony *pendente lite* payments alleg-
edly due her on a judgment entered in 1950. At the time the will was
executed in 1966, testatrix' son was an inebriate, completely dependent
upon his mother; he died two months later. Plaintiff's claim, if allowed,

will consume all of the personal property of the estate and a substantial portion of the real estate. *Held:* Assuming that plaintiff, as creditor of testatrix' son, became a beneficiary under item one, the conflict between the first and second items presents a patent ambiguity as to the intent of testatrix, and extrinsic evidence as to facts and circumstances surrounding testatrix at the time she executed the instrument should be considered.

**7. Wills § 28— rule of construction**

If the terms of a will are set forth in clear, unequivocal and unambiguous language, judicial construction is unnecessary; but when doubt exists as to what the testatrix intended, the court may be called on to construe the will.

**8. Wills § 28— rules of construction — patent ambiguity — intent of testator**

Where a will contains a patent ambiguity, extrinsic evidence is not admissible to explain the meaning of the words used, and it is the duty of the court to declare the testatrix' intent as expressed in the instrument; but where the patent ambiguity relates to intent, extrinsic evidence as to the facts and circumstances surrounding the testatrix at the time she executed the instrument is competent to aid the court in ascertaining the intent of testatrix from the language of the instrument.

**9. Wills § 73; Appeal and Error § 1— construction of wills — jurisdiction of Court of Appeals**

The Court of Appeals has no original jurisdiction in matters relating to the construction of a will, but is limited to a review of the decisions of the superior court.

APPEAL by plaintiff from *Peel, J.,* at the 21 January 1969 Session of NEW HANOVER Superior Court.

Plaintiff filed her complaint 15 September 1967, alleging the following: Juliette Orrell Way died 6 January 1967 leaving a will which provided that "all of my son's, Robert Orrell [sic] Way, Sr., debts and funeral expenses shall be paid out of my estate." Plaintiff had been married to Robert O. Way, Sr., and an order for alimony and support was docketed in the office of the Clerk of Superior Court of New Hanover County on 16 September 1950. This order provided for payment of $15.00 per week until further orders of the court. There has been no subsequent change or modification of the order. Defendant filed her final account on 20 July 1967 without making any payment to plaintiff. Plaintiff prayed that the final account by the defendant executrix be set aside and that plaintiff receive $11,-955.00 plus interest.

Defendant answered admitting the terms of the will, the marriage and the order for alimony but denying that the alimony constituted a debt of Robert O. Way, Sr., at the date of Juliette Orrell Way's

death, as Robert O. Way, Sr., died 5 May 1966. Defendant further alleged that the alimony payments to Hazel Way Morse were not debts of Robert O. Way, that the statute of limitations was applicable, that plaintiff's claim was barred by her failure to file her claim after advertisement for claims by the defendant, and that any obligation of Robert O. Way terminated at his death.

The evidence indicated the following: Plaintiff and Robert O. Way were married 12 June 1941 and separated in 1947, one child having been born of the marriage. On 16 September 1950, Burney, J., entered the following order in the action of Hazel K. Way vs. Robert O. Way:

> "This action having been called and heard and the Court having heard the evidence submitted and being of the opinion plaintiff is entitled to receive from the defendant alimony pendente lite, and an allowance to her for attorney's fee; she having produced evidence to support her allegations.
>
> IT IS NOW * * * Ordered and ADJUDGED, That the Defendant pay in to the office of the Clerk of this Court the sum of $15.00 weekly for the support of Plaintiff and her minor child pending the trial of the court * * * until the further orders of this Court. * * *"

In a separate action, an absolute divorce was granted to Hazel K. Way in the Superior Court of New Hanover County on 28 May 1951. Plaintiff offered evidence to show that only a few payments on the Burney judgment were ever made. Her son by Robert Way was twenty-three years old in February 1966.

Robert O. Way, Sr., died 5 May 1966 and there was no administration of his estate. Juliette O. Way died 6 January 1967. The executrix of her estate duly notified creditors of the estate to file their claims by 23 July 1967 and the final account was filed 19 July 1967. Plaintiff filed her notice of claim on 26 July 1967. Other pertinent facts are stated in the opinion.

At the close of plaintiff's evidence, the court granted defendant's motion for nonsuit. Plaintiff appealed.

*Robert Calder for plaintiff appellant.*

*Marshall & Williams by Lonnie B. Williams for defendant appellee.*

BRITT, J.

**[1-4]** The following principles applicable to this case appear to be well settled in this jurisdiction:

(1) An allowance for alimony is a debt. *Barber v. Barber,* 217 N.C. 422, 8 S.E. 2d 204; 2 Lee, N.C. Family Law, § 158, p. 248.

(2) The statute of limitations does not apply to a judgment directing the payment of alimony. G.S. 1-306; 2 Lee, N.C. Family Law, § 164, p. 269.

(3) A decree for absolute divorce on ground of two years' separation granted on 28 May 1951 does not destroy the wife's right to receive alimony pendente lite under a judgment entered on 16 September 1950 in a separate action instituted by her under G.S. 50-16. *Yow v. Yow,* 243 N.C. 79, 89 S.E. 2d 867; 2 Lee, N.C. Family Law, § 154, p. 239.

(4) Although a creditor who does not present his claim within six months from the date of the first publication of notice cannot hold the personal representative liable for any assets which he may have paid out prior to the commencement of an action by the creditor, he can share in any assets which remain in the hands of the personal representative. 2 Wiggins, Wills and Administration of Estates in N. C., § 237, p. 713, and cases therein cited.

**[5]** Applying the foregoing principles to the instant case, (1) the unpaid payments on the 16 September 1950 alimony pendente lite judgment entered in favor of plaintiff against Robert O. Way constituted a debt of Robert O. Way; (2) the statute of limitations did not run against said indebtedness; (3) the indebtedness was not affected by the 28 May 1951 divorce decree; and (4) plaintiff's "claim" against Mrs. Way's estate was not cut off by plaintiff's failure to file the same with the executrix within six months after first publication of notice to creditors.

In his brief, plaintiff's counsel contends that plaintiff is not a *creditor* of Mrs. Way's estate and asserts no *claim* against the estate; he contends that plaintiff "was a creditor of and had a claim against the son of the decedent and by the terms of her will the decedent made the plaintiff a beneficiary by providing that the debts of her deceased son should be paid from the estate."

The final account filed by defendant discloses that the executrix received personal property consisting of receipts from savings and loan shares aggregating $6,545.59; that disbursements, consisting of funeral expenses, a doctor bill, state inheritance taxes, and costs of

administration of the estate, aggregated $1,503.82; that the balance of the personal property in amount of $5,041.77 was paid to Catherine Way Zatkiewiez as the sole beneficiary under the will. The record indicates that the only other property left by the decedent was real estate of the value of approximately $22,000.00. Plaintiff contends that she is entitled to receive $11,955.00 plus interest calculated on the alimony payments from the dates they were due.

[6]    The first and second items of the will provided as follows:

"FIRST: I direct all of my just debts and funeral expenses shall be paid as soon after my death as can be conveniently done, and I further direct and hereby provide that all of my son's, ROBERT R. [sic] WAY, SR., debts and funeral expenses shall be paid out of my estate.

SECOND: I give, bequeath and devise all of my property, both real, personal and mixed, wherever situate, to my beloved daughter, Catherine W. Zatkiewiez * * *"

[6, 7]    It will be noted that if plaintiff's "claim" is allowed, it will consume all of the personal property of the estate and a substantial portion of the real estate. Proceeding on plaintiff's theory that she is a beneficiary by virtue of the first item of the will, we think there is a conflict between the first item and the second item which purports to make Mrs. Zatkiewiez the sole beneficiary. If the terms of a will are set forth in clear, unequivocal and unambiguous language, judicial construction is unnecessary; but when doubt exists as to what the testatrix intended, the court may be called on to construe the will. 1 Wiggins, Wills and Administration of Estates in N. C., § 132, pp. 396, 397, and cases therein cited.

[8]    Where a will contains a patent ambiguity, extrinsic evidence is not admissible to explain the meaning of the words used, and it is the duty of the court to declare the testatrix's intent as expressed in the instrument in accordance with established rules of construction; but where the patent ambiguity relates to intent, extrinsic evidence as to the facts and circumstances surrounding the testatrix at the time she executed the instrument is competent to aid the court in ascertaining the intent of the testatrix from the language of the instrument. 7 Strong, N. C. Index 2d, Wills, § 28, pp. 601, 602.

Defendant contends that the court should construe the will of Mrs. Way in light of circumstances existing at the time she executed the will. The record discloses that the will was executed on 16 February 1966 and at that time Robert O. Way was an inebriate, com-

pletely dependent on his mother; that he died less than two months later and Mrs. Way died eight months thereafter.

Although the facts in *Trust Co. v. Wolfe,* 243 N.C. 469, 91 S.E. 2d 246, were different from those in the case at bar, we think the principles of law applied by the Supreme Court in that case are applicable to this case. We quote from the opinion written by Bobbitt, J.:

> "*Barnhill, J.,* now C.J., in *Trust Co. v. Waddell, supra,* says: 'In ascertaining the intent of the testator, the will is to be considered in the light of the conditions and circumstances existing *at the time the will was made. Scales v. Barringer,* 192 N.C. 94, 133 S.E. 410; *Heyer v. Bulluck,* 210 N.C. 321, 186 S.E. 356; *Cannon v. Cannon,* 225 N.C. 611, 36 S.E. 2d 17; *In re Will of Johnson,* 233 N.C. 570, 65 S.E. 2d 12.
>
> ' ". . . the court should place itself as nearly as practicable in the position of the testator . . . at the time of the execution of the will." *In re Will of Johnson, supra.*'
>
> *Clark, C.J.,* in *Patterson v. McCormick,* 181 N.C. 311, 107 S.E. 12, in a sentence frequently quoted, puts it this way: 'The will must be construed, "taking it by its four corners" and according to the intent of the testator as we conceive it to be upon the face thereof and according to the circumstances attendant.'
>
> Generally, 'the circumstances attendant' when the will was made refers to the relationships between the testator and the beneficiaries named in the will, and the condition, nature and extent of his property. *Hubbard v. Wiggins,* 240 N.C. 197, 81 S.E. 2d 630; *Heyer v. Bulluck, supra; Herring v. Williams,* 153 N.C. 231, 69 S.E. 140; *Woods v. Woods,* 55 N.C. 420.
>
> It is frequently said, as in *Heyer v. Bulluck, supra,* that 'the attendant circumstances' are to be considered 'where the language is ambiguous, or of doubtful meaning.' In such case, the court undertakes 'to put itself in the testator's armchair.' In so doing, as well expressed by *Torrance, C.J.,* in *Thompson v. Betts,* 74 Conn. 579, 51 Atl. 566, 92 Am. St. Rep. 235: 'In short, the court may, by evidence of extrinsic facts, other than direct evidence of the intention of the testator, put itself as near as may be "in the condition of the testator in respect to his property and the situation of his family," for the purpose of rightly understanding the meaning of the words of his will.' "

[9] We think Mrs. Way's will requires judicial construction. The question then arises, should this Court perform the judicial function of construing the will. This question was answered in *Woodard v.*

*Clark,* 234 N.C. 215, 66 S.E. 2d 888, in an opinion by Barnhill, J. (later C.J.), in the following language:

> "Why doesn't this Court perform this judicial function and be done with it? Simply because this Court possesses no original jurisdiction in such matters. Its duty is to review the decisions of the Superior Courts of the State. The court below must exercise its original jurisdiction. If the parties are not then satisfied with the judgment entered they may bring the cause back for review."

Having decided that the superior court must make the determination, how will it perform the task? This question is answered in *Trust Co. v. Wolfe, supra,* where it was held that "the question posed was for the court, without a jury. In the absence of stipulation, 'the circumstances attendant' are to be established by findings of fact by the court." However, the trial judge, in his discretion, *may* submit questions of fact to a jury for determination. *Trust Co. v. Wolfe, supra.*

[6]    Considering this case in the light of plaintiff's theory — that as a creditor of Robert O. Way she became a beneficiary under item one of the will — and in view of the fact that item two of the will purports to name Mrs. Zatkiewiez sole beneficiary, we conclude that the will contains a patent ambiguity relating to the intent of the testatrix, making it necessary for the court to determine the intent of the testatrix and that extrinsic evidence as to the facts and circumstances surrounding the testatrix at the time she executed the instrument should be received to ascertain such intent. Therefore, the judgment of the superior court dismissing the action as in case of nonsuit is vacated and the cause is remanded to the Superior Court of New Hanover County for further proceedings not inconsistent with this opinion.

Error and remanded.

Mallard, C.J., and Parker, J., concur.